# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 05-2297

———————

Denise R. Hite,                    *
                                   *
    Plaintiff - Appellee,          *
                                   *  Appeal from the United States
    v.                             *  District Court for the
                                   *  Southern District of Iowa.
Vermeer Manufacturing Company;     *
Rick Leedom,                       *
                                   *
    Defendants - Appellants.       *

———————

Submitted: January 11, 2006
Filed: May 9, 2006

———————

Before MURPHY, HANSEN and SMITH, Circuit Judges.

———————

SMITH, Circuit Judge.

Denise R. Hite sued her employer, Vermeer Manufacturing Company ("Vermeer") and her supervisor, Rick Leedom, for retaliation in violation of the Family Medical Leave Act (FMLA). The jury returned a verdict in favor of Hite and awarded her back pay. The district court awarded Hite front pay, liquidated damages plus interest, and attorney's fees. The district court[1] subsequently denied Vermeer's and Leedom's motions for judgment as a matter of law or for a new trial and to amend

---

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

or alter the judgment. Vermeer and Leedom appeal the denial of their post-trial motions. We affirm.

## I. *Background*

We recite the facts in the light most favorable to the jury's verdict. *United States v. Selwyn*, 398 F.3d 1064, 1065 (8th Cir. 2005).

Denise Hite began working for Vermeer on December 15, 1997, as a drill operator and progressed to CNC lathe machine operator in May 1999. Prior to joining Vermeer, Hite had been diagnosed with major depressive disorder by her physician, Dr. Nancy Vander Broek. Major depressive episodes hampered Hite's work ability. Beginning in January 2000, Hite exercised her rights to take leave under the FMLA to address the severe depression bouts which recurred periodically in 2000 and 2001.

When Hite needed to use FMLA leave, she would contact her supervisor directly or leave a message for him prior to the start of her shift. In addition, Hite would notify Pam Montegna, Vermeer's FMLA Coordinator. Hite would then fill out a short-term disability application with Dr. Vander Broek to give to Montegna. Dr. Vander Broek would also certify when Hite could return to work.

In February 2001, Dr. Vander Broek recommended intermittent FMLA leave for Hite because of the sporadic nature of her illness. Intermittent leave enabled Hite to use FMLA leave for periods of time less than an entire shift. Hite used this intermittent FMLA leave when she arrived at work 15 or 30 minutes late or wanted to leave work early due to her condition.

Hite's difficulty exercising FMLA leave began when Rick Leedom became Hite's supervisor. From the beginning of his supervision, Leedom reacted negatively to Hite's use of FMLA leave. When Hite missed work, Leedom would question whether she was really sick under the FMLA guidelines. Leedom would call Hite into

his office and tell her he "couldn't see anything wrong with her" and therefore she "needed to be at work." He also said that because of her absences, her production levels would be called into question. In addition, Leedom commented to his assistant that FMLA was "bad for the company" and complained regularly to Martin Van Wyk, Vermeer's Human Resources Manager, and Montegna about Hite's use of FMLA leave.

Leedom also routinely transferred Hite to different machines upon her return from leave. The machines were of a lower classification than the CNC lathe machine and were more difficult for Hite to operate. Leedom informed Hite that he was transferring her because "the CNC lathe was a critical machine that needed to be run every day, every shift, 24 hours a day" and because of her FMLA leave. When Hite would complain to Van Wyk about Leedom moving her, she would eventually be returned to the CNC lathe machine; however, Leedom continued to transfer her to different machines. Her pay was never adversely affected by the transfers.

During employee evaluations on December 6, 2000, Leedom informed Hite that he would permanently remove her from the CNC lathe machine if she continued to use FMLA leave. The evaluation noted that Hite had seven unexcused absences, which were days that Hite used her FMLA leave. Leedom told Hite that if she continued to use FMLA leave, her job at Vermeer would be in jeopardy.

During January 2001, Hite used her vacation time because she was ill and wanted to receive pay. Vermeer's policy required the employee to call in and request a vacation day. The employee received the vacation day the same day she requested it. Pursuant to the policy, Hite called in on three consecutive days asking for vacation time. On the fourth day, however, Leedom called back and left a voice message on Hite's answering machine, stating that her vacation time was denied and that she must report to work the next day or she would lose her job. Leedom told Hite that for the rest of 2001, she had to give a 30-day notice to use her vacation days. Hite requested

vacation leave the day her grandfather died but was denied because of the 30-day notice Leedom imposed. Also Leedom disciplined Hite for every sick day that was not covered by FMLA, vacation time, or personal time, something that was solely at Leedom's discretion and for which he did not punish other employees.

Hite frequently complained to Van Wyk and Montegna about Leedom's reaction to her use of FMLA leave. Leedom treated Hite differently than other employees by citing her for minor rule violations not commonly used with other workers. After one such citation, Hite met with Leedom and Van Wyk regarding the disciplinary action. Hite refused to sign the disciplinary form. After the meeting, Hite had an anxiety attack and went to the FMLA office to meet with Montegna. Hite told Montegna that Leedom and Van Wyk were making it impossible for her to be at work and were harassing her about using FMLA leave. She expressed her fear that she would lose her job because of her complaints, as well as her use of FMLA leave. Montegna told Hite she would talk to Van Wyk about Hite's concerns. After that meeting, Hite went to see Dr. Vander Broek and took two weeks FMLA leave.

When Hite returned to work, she had another meeting with Montegna and Van Wyk. Prior to the meeting, Leedom requested that Van Wyk remove Hite from the CNC lathe machine because of her absences and their effect on productivity. During the meeting, Montegna, Van Wyk, and Hite decided that if Hite would agree to move to a different job, "all harassment and retaliation by Rick Leedom against [Hite] for [her] disability would be stopped." While the new machine Hite operated was more difficult for her to operate and was physically too demanding for her, she worked at the machine until her termination.

After Hite's transfer, Becky Nichols, a contract nurse hired by Vermeer, frequently contacted Dr. Vander Broek seeking "clarification" of Hite's use of FMLA

leave.[2] Hite never gave anyone at Vermeer permission to contact Dr. Vander Broek seeking information about her use of FMLA leave.

Hite's last use of FMLA leave was on June 14, 2001. About two months later, Hite requested and received permission from Leedom to place a cell phone call on company property.[3] On the same day, Leedom informed Human Resources Manager Cornelis Van Walbeek and, according to Van Walbeek's testimony, recommended to Van Walbeek that he terminate Hite. Subsequently, Van Walbeek summarized Hite's disciplinary history, taking into account Hite's entire disciplinary history contrary to company practice of only considering one year. Van Walbeek's review of Hite's attendance records familiarized him with Hite's FMLA usage.

Van Walbeek, Leedom, and Hite met on August 28, 2001. At the meeting, Hite was informed that she was being terminated for using her cell phone outside the plant and away from her machine during company time. When Hite tried to explain to Van Walbeek that Leedom gave her permission to use her cell phone prior to making the call, Van Walbeek responded that he did not care. In addition to the alleged cell phone policy violation, Van Walbeek considered additional disciplinary actions in

---

[2]The FMLA prohibits Vermeer, an employer, from directly contacting an employee's doctor. Under the FMLA, Vermeer was to keep confidential all of its employees' medical information; however, it allowed Nichols to access Hite's confidential medical information because Nichols was an on-site medical advisor. Montegna testified that the regulations permitted Vermeer to have a person as the employer's representative contact the doctor for clarification, and that she reviewed this with her United States Department of Labor contact.

[3]Vermeer had no written cell phone usage policy at the time, and no other employee had ever been fired for improper use of a cell phone. Vermeer, however, had "communicated [its] expectations to employees" about cell phone use, telling its employees at departmental meetings that they should not use their cell phones on company time unless a supervisor approved it. At Vermeer, a policy violation can result in disciplinary action, including termination.

determining to terminate Hite's employment. As of August 24, 2001, Hite had received written warnings and received coaching and counseling ("C&C") regarding attendance, safety, and conduct on eleven occasions. Only four of the eleven disciplinary actions occurred within a year of her termination date.

Hite filed suit against Vermeer and Rick Leedom, alleging retaliation under the FMLA. At trial, Hite presented the testimony of Ruth Johnson and Stacy Wharton, former Vermeer employees, about Vermeer's retaliatory practices. Johnson testified that after she began taking FMLA leave for her anxiety disorder, she began having disciplinary problems at Vermeer. Montegna told Johnson to "get [her] act together or [she would] lose her job." Johnson testified that she was ultimately terminated as a result of the FMLA absences. Similarly, Wharton testified that she experienced adverse employment actions after using FMLA leave. Wharton also testified that her father, a long-time supervisor at Vermeer, told her that Hite had been targeted for termination because of her FMLA absences.

The jury returned a verdict in favor of Hite, awarding her back pay in the amount of $107,571.97. The district court subsequently awarded Hite $15,512.76 in front pay, liquidated damages in an amount equal to that awarded by the jury for back pay, $107,571.97, and attorney's fees and costs of $78,866.50. Vermeer and Leedom filed motions for judgment as a matter of law or for a new trial and to amend or alter the judgment. The district court denied their motions.

II. *Discussion*

Vermeer and Leedom raise three arguments on appeal: (1) that the district court erred in finding that there was sufficient evidence of FMLA retaliation; (2) that the district court erred in finding there was sufficient evidence to support the award of liquidated damages plus interest; and (3) that the district court abused its discretion in refusing to amend the judgment to reduce the back pay award.

## A. *FMLA Retaliation Claim*

Vermeer and Leedom first argue that the district court should have granted their motion for judgment as a matter of law because insufficient evidence supports a finding of a causal link between Vermeer's termination of Hite and her use of FMLA leave, or, in the alternative, insufficient evidence exists to support a finding of pretext. We review a district court's denial of judgment as a matter of law de novo. *Kipp v. Mo. Highway & Transp. Comm'n*, 280 F.3d 893, 896 (8th Cir. 2002). We review a court's denial of a motion for a new trial for an abuse of discretion. *Adzick v. UNUM Life Ins. Co. of Am.*, 351 F.3d 883, 886 (8th Cir. 2003).

"Under [the] FMLA, eligible employees are entitled to take leave from work for certain family or medical reasons, including a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Cooper v. Olin Corp., Winchester Div.*, 246 F.3d 1083, 1090 (8th Cir. 2001) (quoting 29 U.S.C. § 2612(a)(1); *Reynolds v. Phillips & Temro Indust., Inc.*, 195 F.3d 411, 413 (8th Cir. 1999)). "The FMLA provides eligible employees up to 12 workweeks of unpaid leave during any 12-month period." *Darby v. Bratch*, 287 F.3d 673, 679 (8th Cir. 2002) (citing 29 U.S.C. § 2612). It prohibits employers from discriminating or "retaliating" against an employee for asserting her rights under the Act. *Id.* (citing 29 U.S.C. § 2612(a)(2)). Therefore, an employer may not consider "an employee's use of FMLA leave as a negative factor in an employment action." *Id.* "Basing an adverse employment action on an employee's use of leave, or in other words, retaliation for exercise of Leave Act rights, is therefore actionable." *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir. 2002).

An employee can prove retaliation through circumstantial evidence, using the *McDonnell Douglas* burden-shifting analysis. *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973)). First, the employee must establish a prima facie case of retaliatory discrimination by showing that "she exercised rights afforded by the Act, that she suffered an adverse employment action, and that there was a

causal connection between her exercise of rights and the adverse employment action." *Id.* Second, once the employee establishes a prima facie case, the burden shifts to the employer to article a legitimate, nondiscriminatory reason for its actions. *Id.* at 833. Finally, the burden shifts back to the employee to demonstrate that the "employer's proffered reason is pretextual." *Id.* The employee must present evidence that "(1) creates a question of fact regarding whether [the defendant's] reason was pretextual and (2) creates a reasonable inference that [the defendant] acted in retaliation." *Id.*

We recognize that "[w]hen the parties have developed a full trial record, we are not concerned with plaintiff's prima facie case." *EEOC v. Kohler Co.*, 335 F.3d 766, 772 (8th Cir. 2003). Instead, once the jury makes a finding of retaliation "and that judgment is being considered on appeal, the *McDonnell Douglas* presumptions fade away, and the appellate court should simply study the record with a view to determining whether the evidence is sufficient to support whatever finding was made at trial." *Id.* at 773 (internal quotations and citation omitted). We must affirm the jury's verdict "unless, viewing the evidence in the light most favorable to the prevailing party, we conclude that a reasonable jury could not have found for that party." *Id.* at 772 (internal quotations and citation omitted). We do not lightly set aside a jury's verdict. *Id.*

"Thus, the principal issue before us is whether [Hite] produced sufficient evidence to allow a reasonable jury to find [that Vermeer] retaliated against [her]." *Id.* at 773.

### 1. *Causation*

Vermeer questions whether Hite sufficiently established causation. We evaluate the causal-connection evidence "in light of all the evidence in the record." *Id.* at 773 n.7. To establish a causal link between the employee's exercise of FMLA rights and

her termination, the employee must prove "that an employer's 'retaliatory motive played a part in the adverse employment action.'" *Kipp*, 280 F.3d at 897 (quoting *Sumner v. United States Postal Serv.*, 899 F.2d 203, 208–09 (2d Cir. 1990)). "[E]vidence that gives rise to 'an inference of a retaliatory motive' on the part of the employer is sufficient to establish a causal link." *Id.* (quoting *Rath v. Selection Research, Inc.*, 978 F.2d 1087, 1090 (8th Cir. 1992); *Couty v. Dole*, 886 F.2d 147, 148 (8th Cir. 1989)).

An employee can establish a causal link between her protected activity and the adverse employment action through "the timing of the two events." *Eliserio v. United Steelworkers of Am.*, 398 F.3d 1071, 1079 (8th Cir. 2005). "A pattern of adverse actions that occur just after protected activity can supply the extra quantum of evidence to satisfy the causation requirement." *Smith*, 302 F.3d at 832. The mere coincidence of timing, however, is rarely sufficient to establish the causation element. *Haas v. Kelly Serv., Inc.*, 409 F.3d 1030, 1037 (8th Cir. 2005). Cases in which we have determined that temporal proximity alone was sufficient to create an inference of the causal link "have uniformly held that the temporal proximity must be 'very close.'" *Wallace v. Sparks Health Sys.*, 415 F.3d 853, 859 (8th Cir. 2005).

Even if temporal proximity alone is insufficient to establish causation, the employee may attempt to prove causation by providing evidence of the employer's discriminatory comments. *See Watson v. O'Neill*, 365 F.3d 609, 613 (8th Cir. 2004) (finding a causal connection between the employee's protected activity and the adverse employment action where one supervisor said that he was not "going to let a nigger manage my bitches," while another supervisor commented that the employee "would never excel in the agency" because he assisted in a 1993 employment discrimination case against the supervisor). Furthermore, where an ultimate decisionmaker relies on the discriminatory comments of another employee or supervisor in deciding to

terminate the employee, the employee may be able to establish a causal connection. *See Fast v. Southern Union Co., Inc.*, 149 F.3d 885, 891 (8th Cir. 1998).

An employee may attempt to "shorten the gap between her protected activity and the adverse action by showing that shortly after she [engaged in the protected activity, the employer] took escalating adverse and retaliatory action against her." *Kasper v. Federated Mut. Ins. Co.*, 425 F.3d 496, 503 (8th Cir. 2005). When the employee presents such background information, we may consider it as evidence of discrimination. *Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1037 (8th Cir. 2005); *see also Bassett v. City of Minneapolis*, 211 F.3d 1097, 1105 (8th Cir. 2000) (holding that excessive pattern of protected activity followed by disciplinary measures established causation); *Kim v. Nash Finch Co.*, 123 F.3d 1046, 1060 (8th Cir. 1997) (declining to decide whether "each act in itself constituted actionable 'adverse employment action' because [the employee] essentially claimed that [the employer] had systematically retaliated against him, that is, that all the acts were taken in response to his filing the employment discrimination charge and were thus connected to one another").

We find that sufficient evidence supports the jury's finding of a causal link between Vermeer's termination of Hite and her use of FMLA leave. While Hite last used her FMLA leave two months before her termination, she presented additional evidence other than temporal proximity to establish the causation element.

First, as in *Watson*, Leedom made comments to Hite in which he specifically told her she would lose her job if she continued to use FMLA leave. Furthermore, Van Walbeek, the ultimate decisionmaker, testified that Leedom recommended Hite's termination and that while he "couldn't recall" whether he and Leedom discussed Hite's use of FMLA leave, he was aware of all the FMLA time Hite had used when

-10-

he terminated her. Based on Van Walbeek's testimony, the jury could infer that Van Walbeek did rely, at least in part, on Hite's FMLA usage in terminating her.

Second, Hite presented evidence that Vermeer and Leedom took escalating retaliatory action against her for using FMLA leave. Each time Hite returned from FMLA leave, Leedom questioned her about whether she really was sick under the FMLA guidelines and spoke negatively of her use of FMLA leave. Leedom moved Hite to different machines, telling her he was doing so because she used FMLA leave and disciplined her for every sick day not covered by FMLA. In addition, he punished her for returning late from break and not clocking out—activities that Johnson and Wharton testified Vermeer normally did not punish. Hite was also the only employee that Leedom required to give 30-days notice before using vacation days. Finally, Van Wyk and Montegna admitted that Leedom had been punishing Hite for using FMLA leave when they told Hite that Leedom's treatment of her would stop if she would switch machines.

## 2. *Pretext*

"If the employer comes forward with evidence of a legitimate, nondiscriminatory reason for its treatment of the employee, the employee must then point to some evidence that the employer's proffered reason is pretextual." *Smith*, 302 F.3d at 833. The employee shows pretext by establishing that the employer's "justification for the [adverse action] was unworthy of credence." *Id*. at 833–34.

An employee can prove pretext in several ways. First, the employee can show that the employer's proffered explanation has no basis in fact. *Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 881 (8th Cir. 2005). "In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143 (2000).

-11-

Also, the employee can prove pretext by showing that the employer varied from its normal policy or practice to address the employee's situation. *Erickson v. Farmland Indus., Inc.*, 271 F.3d 718, 727 (8th Cir. 2001). For example, the employee could show that the employer routinely treated similarly situated employees who were not in the protected class more leniently. *Smith*, 302 F.3d at 835. Likewise, the employee could demonstrate that she was discharged pursuant to an inconsistent policy. *Wallace*, 415 F.3d at 860.

If the employee presents strong evidence of a prima facie case, then such evidence may establish pretext. *Smith*, 302 F.3d at 834. In addition, "the trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.'" *Reeves*, 530 U.S. at 143 (quoting *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 n.10 (1981)).

We find that sufficient evidence exists to support a finding of pretext for Vermeer's proffered justification for terminating Hite, which was that Hite was using her cell phone outside the plant and away from her machine during company time. Not only is the evidence presented in Hite's prima facie case suggestive of pretext, but the jury could also have found that Leedom's allegation that Hite used her cell phone without permission had no basis in fact. Hite testified that Leedom gave her permission to be away from her machine and use her cell phone. In addition, Wharton testified that her father, a supervisor at Vermeer, told her that Hite had been targeted for termination because of her FMLA absences. The jury was entitled to make a credibility determination as to whether it believed Leedom or Hite; it chose to believe the latter.

Second, Hite presented evidence that Vermeer did not respond to other employees in the way that it responded to Hite. Johnson and Wharton testified that it was common for Vermeer employees not to be punished for leaving the plant at lunch

without clocking out, while Leedom did punish Hite for not clocking out on her lunch break.

Finally, Johnson and Wharton testified that they had personally experienced retaliation by Vermeer for taking FMLA leave, demonstrating a pattern of discrimination. Therefore, we hold that the district court did not err in finding that sufficient evidence of FMLA retaliation existed to support the jury's verdict.

## B. *Liquidated Damages and Interest*

Vermeer's and Leedom's second argument is that the district court's award of liquidated damages and interest was unsupported by the evidence. We review a district court's award of liquidated damages and interest for an abuse of discretion. *Thorson v. Gemini, Inc.*, 205 F.3d 370, 383 (8th Cir. 2000).

## 1. *Liquidated Damages*

The FMLA provides that the employer "shall be liable to any eligible employee affected [by a violation of the Act] . . . [for] an additional amount as liquidated damages equal to the sum of the amount" of other damages and interest awarded pursuant to § 2617(a)(1)(A)(i) and (ii). 29 U.S.C. § 2617(a)(1)(A)(iii).

There is, however, an exception to "this otherwise mandatory call for liquidated damages." *Thorson,* 205 F.3d at 383. That is, if the employer proves "to the satisfaction of the court that the act or omission which violated section 2615 of this title was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615 of this title, such court may, in the discretion of the court, reduce the amount of the liability to the amount and interest determined under clauses (i) and (ii) respectively." 29 U.S.C. § 2617(A)(iii); *see also Thorson*, 205 F.3d at 838 (stating that if good faith is shown, then the "court in its discretion may decline the award of liquidated damages").

-13-

To avoid a liquidated damages award, the defendant bears the burden of establishing that it acted with subjective good faith and that it had an objectively reasonable belief that its conduct did not violate the law. *See Hultgren v. County of Lancaster*, 913 F.2d 498, 509 (8th Cir. 1990) (applying standard of the Fair Labor Standards Act). The good faith requirement demands that the defendant establish that it honestly intended to ascertain the dictates of the FMLA and to act in conformance with it. *See Marshall v. Brunner*, 668 F.2d 748, 753 (3rd Cir. 1982) (applying standard of the Fair Labor Standards Act).

However, even if the employer did act in good faith, "the decision to award liquidated damages is still within the discretion of the trial court." *Nero v. Indust. Molding Corp.*, 167 F.3d 921, 928 (5th Cir. 1999). The district court should exercise its discretion "consistently with the strong presumption under the statute in favor of doubling." *Shea v. Galaxie Lumber & Constr. Co., Ltd.*, 152 F.3d 729, 733 (7th Cir. 1998).

Showing good faith when a jury has determined intentional retaliation is a very high bar to clear, if indeed it can be. However, based upon the record before us, we have no difficulty holding that the district court did not abuse its discretion in awarding liquidated damages. Here, the jury found that Vermeer and Leedom intentionally retaliated against Hite for taking FMLA leave. The jury was presented with evidence that Leedom harassed Hite about using FMLA leave on a continual basis, and that when Hite complained to her superiors, Leedom's harassment did not cease.

## 2. *Interest*

When an employer violates the FMLA, such employer is liable to the employee for "the interest on the amount described in clause (i) calculated at the prevailing rate . . . ." 29 U.S.C. § 2617(A)(ii). Clause (i) refers to the jury's award for "any wages, salary, employment benefits, or other compensation denied or lost

to such employee by reason of the violation [of the FMLA]." *Id.* § 2617(A)(i)(I). Section 2617 indicates that the award of such interest is mandatory. *Id.* § 2617 ("Any employer who violates section 2615 of this title shall be liable to any eligible employee affected. . . ."). Vermeer and Leedom make no convincing argument nor cite any authority showing that the interest awarded was improperly calculated. We therefore affirm the district court's interest award.

### C. *Back Pay Award*

The final argument of Vermeer and Leedom is that the district court should have granted their motion to alter or amend the judgment regarding back pay because the jury's back pay award was based on an amount Hite would have made had she worked a full 52 weeks per year since her termination. They argue that the evidence shows that Hite would have worked no more than 40 weeks per year had she continued to work at Vermeer; therefore, the district court erred by not remitting to an amount for 40 weeks.

We will only reverse a district court's denial of a motion for remittitur "upon a manifest abuse of discretion or because the verdict is so grossly excessive the result is monstrous or shocking." *Callantine v. Staff Builders, Inc.*, 271 F.3d 1124, 1133 (8th Cir. 2001).

Federal Rule of Civil Procedure Rule 59(e) allows the district court to alter or amend a judgment so that the district court can "rectify its own mistakes in the period immediately following the entry of judgment." *White v. New Hampshire Dep't of Employment Sec.*, 455 U.S. 445, 450 (1982) (internal quotations omitted).

Under Rule 59(e), the "district court should grant remittitur only when the verdict is so grossly excessive as to shock the court's conscience."*Am. Bus. Interiors, Inc. v. Haworth, Inc.*, 798 F.2d 1135, 1146 (8th Cir. 1986). "Whether an

award is excessive rests within the discretion of the trial court." *Jenkins v. McLean Hotel, Inc.*, 859 F.2d 598, 600 (8th Cir. 1988).

When an appellate court is "confronted on review with a jury determination as to a particular measure of damages buttressed by the conclusion of the trial court, who had the benefit of hearing the testimony and observing the demeanor of the witnesses, that the verdict should stand," it "'should be certain that the award is contrary to all reason before it orders a remittitur or a new trial.'" *Slatton v. Martin K. Eby Constr. Co., Inc.*, 506 F.2d 505, 508 (8th Cir. 1974) (quoting *Taylor v. Washington Terminal Co.*, 409 F.2d 145, 148 (D.C. Cir. 1969)).

Here, the jury awarded the amount that the parties stipulated was the correct amount of wages and benefits Hite would have earned had she not been fired by Vermeer. Vermeer and Leedom argued to the jury that Hite's back pay damages should be reduced because of hypothetical FMLA use Hite would have used in the future. The jury apparently rejected this argument.

Therefore, we hold that the district court did not abuse its discretion in denying the motion for remittitur because the jury's back pay award is not grossly excessive or "conscience shocking" in light of the evidence presented to the jury.

### III. *Conclusion*
Accordingly, we affirm the judgment of the district court.

_____