# United States Court of Appeals

### For the Eighth Circuit

_____

No. 13-1772

_____

Wayne Jackson

*Plaintiff - Appellee*

v.

City of Hot Springs

*Defendant - Appellant*

Larry Merriman

*Defendant*

_____

No. 13-1875

_____

Wayne Jackson

*Plaintiff - Appellant*

v.

City of Hot Springs

*Defendant - Appellee*

Larry Merriman

*Defendant*

_____

Appeals from United States District Court
for the Western District of Arkansas - Hot Springs
_____

Submitted: March 12, 2014
Filed: May 12, 2014
_____

Before WOLLMAN, MURPHY, and GRUENDER, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Wayne Jackson brought this lawsuit against the City of Hot Springs, Arkansas ("Hot Springs"), alleging claims under the Family Medical Leave Act ("FMLA"), Title II of the Americans with Disabilities Act ("ADA"), § 504 of the Rehabilitation Act of 1973 ("§ 504"), and the Arkansas Civil Rights Act ("ACRA"). The district court granted Hot Springs's motion for judgment as a matter of law on Jackson's § 504 and ACRA disability-discrimination claims. The jury returned a verdict in favor of Jackson on his FMLA and ACRA retaliation claims, awarding him lost wages and emotional-distress damages.[1]  Hot Springs appeals the denial of its motion for judgment as a matter of law on Jackson's FMLA claim. Jackson cross-appeals the district court's grant of judgment as a matter of law on his ACRA disability-discrimination claim, its vacatur of the emotional-distress damages, and its denial of

_____

[1]The parties and district court refer to these claims as retaliation claims. As we explained in *Pulczinksi v. Trinity Structural Towers, Inc.*, 691 F.3d 996 (8th Cir. 2012), under the FMLA, they are more properly characterized as discrimination claims. *Id.* at 1006. However, to be consistent with the parties' and the district court's use, we refer to them as retaliation claims throughout our opinion.

-2-

liquidated damages on his FMLA retaliation claim. For the reasons explained below, we affirm in part and reverse in part.

## I. Background

Hot Springs hired Jackson as a maintenance technician trainee in the welding and fabrication shop in August 2001. In 2005, he was promoted to welder/machinist in the wastewater lift stations department. On January 18, 2010, Jackson was hospitalized and underwent surgery due to complications with his gallbladder and pancreas. While he recovered, Jackson used his accrued paid sick leave. Jackson exhausted this accrued leave by March 29, 2010. He then requested leave pursuant to the FMLA, and Hot Springs granted this request. Jackson's FMLA leave was set to expire on June 18, 2010. Hot Springs notified Jackson that "[i]f you are still unable to return to work as of June 21, 2010, (as stated in employee handbook), you have the option of requesting a period of leave without pay. Otherwise, your employment shall be terminated as of June 21, 2010." Per Hot Springs's policy, additional leave without pay could not exceed sixty days and had to be approved by both Larry Merriman, Jackson's ultimate supervisor, and the city manager. Jackson requested thirty days of additional leave. Merriman discussed Jackson's request with Randy Davis, Jackson's immediate supervisor. During the conversation, Merriman told Davis that Merriman believed that Jackson's request for additional leave was a ploy to prolong his insurance until he could get disability. Merriman and the city manager ultimately granted Jackson's request. However, Merriman instructed the human resources department that Jackson must return to full duty on July 19, 2010 because Jackson "has been off for his illness since ~1/18/10, [and] we have attempted to accommodate the absence but the additional work load has caused overtime and other issues we can no longer deal with." Jackson was unable to return to work on July 19, 2010, and therefore, Hot Springs terminated his employment.

On August 31, 2010, Jackson's doctor released Jackson to work "with activity as tolerated." Jackson called Davis to tell him about the release. Jackson, Davis, and two other city employees went to Merriman's office to talk to him about reinstating Jackson. Merriman said that Jackson would have to reapply for his job and go through the proper procedures to be rehired. Jackson applied for his prior position in September after the job was posted publicly. Davis and Buddy Ashley, with whom the new hire would be working, selected Jackson and two other candidates to interview. While Merriman was out of town, Davis and two other employees conducted the interviews in the shop so the interviewees could see the equipment and because Davis "wanted to know what they could do." Out of the three interviewees, Jackson received the highest rating because Davis concluded that "he could do all the machines [and] he could handle the workload that was there." Davis informed Hot Springs's human resources department that he recommended that Merriman rehire Jackson. Minnie Lenox, an employee in the human resources department, emailed Merriman the recommendation. On October 1, Merriman replied: "I think it is a mistake, however, I will not micro manage. I will simply hold them accountable for the decision."

However, Merriman did not follow Davis's recommendation to rehire Jackson. Merriman concluded that the proper interview procedure had not been followed because Mike Foshee, the department's safety coordinator, did not participate in the interviews. Davis maintains that Merriman never told him that Foshee had to participate in the interviews. Even though Merriman told Foshee that the interviews would be conducted again, the interviews were not reconducted. No one was hired until the job was reposted in January 2011. Although Jackson reapplied then, he was not chosen for an interview. Merriman alleges that Jackson was not selected this time because other candidates had a skill set better suited for the department, including better diagnostic and computer skills. Merriman admitted that the person who ultimately was hired did not have experience on all the machines in the shop.

In December 2011, Jackson filed a complaint against Hot Springs and Merriman in Arkansas state court.[2] In the complaint, Jackson brought claims under ACRA, ADA, § 504, and the FMLA. Hot Springs removed the case to federal court. The district court partially granted Hot Springs's motion for summary judgment and dismissed Jackson's ADA claims, one of his § 504 claims, and one of his FMLA claims. The parties went to trial on Jackson's FMLA and ACRA retaliation claims based on Hot Springs's termination of his employment and its failure to rehire him, as well as his § 504 and ACRA disability-discrimination claims based on Hot Springs's failure to rehire him. At the close of Jackson's case, Hot Springs moved for judgment as a matter of law on all of Jackson's claims. The district court granted Hot Springs's motion on Jackson's § 504 claim and corresponding ACRA claim for disability discrimination, and Jackson voluntarily dismissed the FMLA and corresponding ACRA retaliation claims that were based on Hot Springs's termination of his employment. Thus, only two claims were submitted to the jury: Jackson's FMLA retaliation claim and the corresponding ACRA retaliation claim, both based upon Hot Springs's failure to rehire him.

The jury returned a verdict in favor of Jackson and awarded him $56,000 for lost compensation and $25,000 for emotional distress. In response to an interrogatory, the jury also found that Hot Springs had acted in good faith. Jackson asked the court to award liquidated damages under the FMLA, which the district court denied. The court also vacated the jury's award of emotional-distress damages because the court concluded that they were not recoverable. Both Hot Springs and Jackson appeal.

---

[2]Jackson voluntarily dismissed Merriman from the lawsuit at the beginning of trial.

## II. Discussion

### A. Hot Springs's Appeal

Hot Springs offers two arguments for why the district court should have granted its motion for judgment as a matter of law on Jackson's FMLA retaliation claim.[3] First, Hot Springs argues that Jackson did not put forth sufficient evidence for a jury to conclude that Jackson could perform the essential functions of the job at the times that Hot Springs did not rehire him. Second, Hot Springs argues that the evidence does not support a causal link between Merriman's failure to rehire him and Jackson's use of FMLA leave. We review the district court's denial of Hot Springs's motion for judgment as a matter of law *de novo*. *Structural Polymer Grp., Ltd. v. Zoltek Corp.*, 543 F.3d 987, 991 (8th Cir. 2008). "In reviewing the sufficiency of the evidence to support the jury's verdict, we interpret the record in a light most favorable to the prevailing party, affirming unless no reasonable juror could have reached the same conclusion." *Id.* "Thus, judgment as a matter of law is appropriate '[w]hen the record contains no proof beyond speculation to support [a] verdict.'" *Arabian Agric. Servs. Co. v. Chief Indus., Inc.*, 309 F.3d 479, 482 (8th Cir. 2002) (alterations in original) (quoting *Sip-Top, Inc. v. Ekco Grp., Inc.*, 86 F.3d 827, 830 (8th Cir. 1996)).

"Under [the] FMLA, eligible employees are entitled to take leave from work for certain family or medical reasons, including a serious health condition that makes the employee unable to perform the functions of the position of such employee." *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 864-65 (8th Cir. 2006) (alteration in original) (internal quotation marks omitted) (quoting *Cooper v. Olin Corp., Winchester Div.*, 246 F.3d 1083, 1090 (8th Cir. 2001)). The FMLA "prohibits employers from

---

[3]Notably, Hot Springs did not appeal the denial of its motion for judgment as a matter of law with respect to the corresponding ACRA retaliation claim. In Part II.B(2), *see infra* at 13-15, however, we conclude that the ACRA does not provide for a cause of action based on FMLA retaliation.

discriminating or 'retaliating' against an employee for asserting her rights under the Act." *Id.* at 865. "Therefore, an employer may not consider 'an employee's use of FMLA leave as a negative factor in an employment action.'" *Id.* (quoting *Darby v. Bratch*, 287 F.3d 673, 679 (8th Cir. 2002)). "Basing an adverse employment action on an employee's use of leave . . . is therefore actionable." *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir. 2002). And "[a]n employee making this type of claim must prove that the employer was motivated by the employee's exercise of rights under the FMLA." *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1006 (8th Cir. 2012). "An employee can prove retaliation through circumstantial evidence, using the *McDonnell Douglas* burden-shifting analysis." *Hite*, 446 F.3d at 865. However, "[w]hen the parties have developed a full trial record . . . . the *McDonnell Douglas* presumptions fade away, and the appellate court should simply study the record with a view to determining whether the evidence is sufficient to support whatever finding was made at trial." *Id.* (alteration in original) (internal quotation marks and citation omitted).

We first address Hot Springs's argument that Jackson did not sufficiently establish that he could perform the essential functions of the job.[4] Viewing the evidence in the light most favorable to Jackson, we conclude that sufficient evidence supports the jury's finding that Jackson was able to perform the essential functions of the job. In September, when Jackson re-applied for the position of welder/machinist, his doctor had released him for work "with activity as tolerated." Additionally, when Davis interviewed Jackson in late September, they walked around the shop during the interview discussing the machines. Davis and the two other interviewers

---

[4]Although the instructions submitted to the jury required such a finding, the parties dispute whether a plaintiff's ability to perform the essential functions of the job is an element of a FMLA retaliation claim based on an employer's failure to rehire. Because we find that sufficient evidence supports the jury's finding that Jackson could perform the essential functions of the job, we will assume without deciding that it is an element of the prima facie case.

recommended that Merriman rehire Jackson because Jackson could operate all of the machines and was the most qualified applicant. Davis also testified that Jackson received the highest rating because "[h]e could handle the workload that was there." Hot Springs argues that Jackson's medical records demonstrated that he had an abdominal hernia, and therefore, he was unable to do the work required of a welder/machinist. However, the medical records indicate that, on August 31, 2010, Jackson was not experiencing abdominal pain and that the hernia did not cause Jackson significant pain until after Hot Springs did not rehire him in October. Hot Springs also argues that Jackson admitted during his deposition that he could not perform the job's lifting requirement. At trial, however, Jackson explained that he could perform the lifting requirements using forklifts as well as a small, hand-held lift. Jackson and Davis also explained that Foshee, the safety coordinator, told the workers that for safety reasons they should get help from coworkers when lifting something heavy.

Lastly, Hot Springs argues that the evidence of Jackson's use of painkillers prevents a finding that he could perform the essential functions of the job because Jackson could not operate heavy machinery while on prescription painkillers. While Jackson regularly was refilling his prescriptions for painkillers, the doctor released him to work despite being aware that Jackson was taking prescription painkillers. Jackson testified that the bottles of the painkillers state "do not operate machinery or equipment until you know how your body reacts to the medicine," and that he had built up tolerance to the painkillers. Jackson also testified that he could operate the machinery while on the painkillers and that he believed he could do the job safely. Thus, giving Jackson the benefit of all reasonable inferences, we cannot conclude that no reasonable juror could find that Jackson could perform the essential functions of the job.

We turn next to Hot Springs's argument that Jackson presented insufficient evidence of causation. "[E]vidence that gives rise to 'an inference of a retaliatory

motive' on the part of the employer is sufficient to establish a causal link." *Hite*, 446 F.3d at 866 (alteration in original) (quoting *Kipp v. Mo. Highway & Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002)). As discussed above, "[t]he law places a high standard on overturning a jury verdict[, and] [j]udgment as a matter of law is proper '[o]nly when there is a complete absence of probative facts to support the conclusion reached.'" *Hathaway v. Runyon*, 132 F.3d 1214, 1220 (8th Cir. 1997) (fourth alteration in original) (quoting *Ryther v. KARE 11*, 108 F.3d 832, 845 (8th Cir. 1997)).

Giving Jackson the benefit of all reasonable inferences and assuming that all conflicts in the evidence were resolved in his favor, we conclude that Jackson presented sufficient evidence to support an inference of a retaliatory motive on the part of Hot Springs. In June 2010, when Jackson requested thirty additional days of leave, Merriman expressed concern that Jackson had been off work for his illness since January and that his leave had created additional workload that the department could no longer handle. Merriman also told Davis that Merriman believed Jackson's request for additional leave was only a ploy to prolong his insurance until he could get disability. In September 2010, after Jackson's doctor released him, Jackson and others wanted Jackson to return to his job, but Merriman made him reapply for the position. After the applicants were interviewed, Davis and the two other interviewers considered Jackson the most qualified candidate, and Davis recommended that Hot Springs rehire Jackson. Hot Springs did not rehire Jackson, despite the fact that he was determined to be the most qualified applicant. Moreover, in response to Davis's recommendation, Merriman emailed the human resources department that "I think it is a mistake." Hot Springs argues that Merriman thought it was a mistake because of Jackson's earlier attendance issues, which were documented in a 2006-2007 evaluation. However, Jackson presented that evaluation, which was for the most part positive—Jackson scored a two out of five on attendance but a four out of five overall. This evaluation also was from more than three years before Merriman wrote that it was a mistake to rehire Jackson. Thus, a jury reasonably could have concluded that

-9-

Merriman thought it was a mistake to rehire Jackson because of his use of FMLA leave rather than his earlier attendance issues.

Hot Springs also argues that the evidence demonstrated that it had legitimate reasons for not rehiring Jackson: that interview procedures were not followed in September and that other candidates had better diagnostic and computer skills in January. However, Davis testified that Merriman never told him that Foshee had to participate in the interviews in September, and Merriman admitted that Hot Springs's official hiring procedures do not require that a department head or safety coordinator attend the interviews. Foshee also testified that Merriman told him that the interviews would be conducted again. These interviews were not reconducted, even though the position needed to be filled quickly. In January, Hot Springs posted a job description with the same qualifications and essential duties and requirements that it posted in September, neither of which included computer skills as a job qualification or requirement. Moreover, unlike Jackson, the person Hot Springs hired did not have experience on all of the machines in the department. The jury also was entitled to make a credibility determination as to whether it believed Merriman's reasons for not re-interviewing and rehiring Jackson, and it apparently chose not to believe them. *See Hite*, 446 F.3d at 868. Additionally, Merriman's reasons for not re-interviewing Jackson in January changed from the reasons that he provided for not rehiring Jackson in October. Merriman claimed that he did not rehire Jackson in October because Jackson's interview was tainted when proper interview procedures were not followed. Merriman claimed that he did not re-interview Jackson in January because the department needed someone with better diagnostic and computer skills than Jackson. This change in reasoning provides support for a finding that discredits Hot Springs's reasons for not rehiring Jackson. *Cf. Elam v. Regions Fin. Corp.*, 601 F.3d 873, 881 (8th Cir. 2010) ("[S]ubstantial changes over time in the employer's proffered reason for its employment decision support a finding of pretext." (quotation omitted)). Therefore, we conclude that there is not a complete absence of probative facts to

support the jury's finding of a causal link between Hot Springs's decision not to rehire Jackson and Jackson's use of his FMLA leave.

Accordingly, we affirm the district court's denial of Hot Springs's motion for judgment as a matter of law on Jackson's FMLA retaliation claim.

## B. Jackson's Cross-Appeal

Jackson makes three arguments in his appeal: that the district court (1) erred in granting Hot Springs's motion for judgment as a matter of law on his claim for disability discrimination under the ACRA; (2) erred in vacating the jury's award of emotional-distress damages; and (3) abused its discretion in denying liquidated damages for his FMLA retaliation claim.

## 1. Grant of Judgment as a Matter of Law

Jackson argues that the district court erred when it granted Hot Springs's motion for judgment as a matter of law on Jackson's ACRA disability-discrimination claim based on Hot Springs's failure to rehire him. We review the grant of a motion for judgment as a matter of law *de novo*. *Arabian Agric. Servs. Co.*, 309 F.3d at 482. Under Federal Rule of Civil Procedure 50(a), "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," judgment as a matter of law is appropriate. Fed. R. Civ. P. 50(a)(1). Motions for judgment as a matter of law "should be granted only when the evidence produced by the party opposing the motion, 'when given the benefit of all reasonable inferences, would not suffice as the basis for a rational conclusion in that party's favor.'" *Warren v. State Farm Fire & Cas. Co.*, 531 F.3d 693, 698 (8th Cir. 2008) (quoting *Madison v. Frank*, 966 F.2d 344, 345 (8th Cir. 1992)).

"At the outset, we note that we analyze a disability claim presented under the ACRA using the same principles employed in analyzing claims under the Americans with Disabilities Act . . . ." *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 490 (8th Cir. 2002). In order to prevail on an ACRA disability-discrimination claim for failure to rehire, Jackson was required to demonstrate that he (1) had a disability within the meaning of the ACRA; (2) was able to perform the essential functions of the job, with or without reasonable accommodation; and (3) was not rehired as a result of the disability. *See id.* The district court concluded that Jackson had not presented sufficient evidence to demonstrate that he could perform the essential functions of the job and, therefore, granted Hot Springs's motion for judgment as a matter of law on this claim. For the reasons discussed above, *see supra* Part II.A, when giving Jackson the benefit of all reasonable inferences, we conclude that the district court erred in finding that Jackson had not presented sufficient evidence for a reasonable jury to conclude that he could perform the essential functions of the job. Nevertheless, after an independent review of the record, we hold that Hot Springs was entitled to judgment as a matter of law on Jackson's ACRA disability-discrimination claim because Jackson did not present sufficient evidence that he suffered an adverse employment action as a result of an ACRA-defined disability. *See Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109, 1116 (8th Cir. 1999) ("[W]e may affirm the district court's judgment [setting aside a jury's verdict] on any basis supported by the record."); *see also Helvering v. Gowran*, 302 U.S. 238, 245 (1937) ("In the review of judicial proceedings the rule is settled that, if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason.").

Jackson explains that his disability was that "he had pancreatitis, had his gall bladder removed, was hospitalized multiple times, had drains for months, was weaker than he had been[,] . . . . had neuropathy in his feet, . . . . [and] had a hernia." Brief for Appellee at 44. However, the ACRA "only contemplates coverage for persons presently suffering a disability." *Faulkner v. Ark. Children's Hosp.*, 69 S.W.3d 393,

-12-

402 (Ark. 2002). At the time that Hot Springs refused to rehire Jackson in October and January, he no longer had pancreatitis, no longer was hospitalized, and no longer had drains in him. Thus, his only remaining ailments were the neuropathy in his feet, his hernia, and his alleged weakness. Even assuming that these qualify as disabilities under the ACRA, Jackson introduced no evidence to demonstrate that Hot Springs knew about his neuropathy, hernia, or weakness. In fact, Jackson admitted that he did not provide Davis with any specifics about his health condition when he sought to be rehired, and Davis testified that Jackson did not inform him of his hernia. Therefore, Jackson did not put forth sufficient facts for a jury to conclude rationally that Hot Springs did not rehire him because of his disability. *See Miller v. Nat'l. Cas. Co.*, 61 F.3d 627, 630 (8th Cir. 1995) (holding that where an employer was unaware of an employee's disability at the time of adverse employment action, "it would have been impossible for the [employer] to have made that disability the basis for the [adverse employment action]"). Accordingly, we affirm the district court's grant of Hot Springs's motion for judgment as a matter of law on Jackson's ACRA disability-discrimination claim.

## 2. Vacatur of Emotional-Distress Damages

The district court vacated the jury's award for emotional-distress damages, concluding that the emotional-distress damages were not recoverable. Jackson appeals, arguing that his ACRA retaliation claim permits recovery of emotional-distress damages. We review *de novo* "whether a particular class of damages was properly before a jury." *Porous Media Corp. v. Midland Brake, Inc.*, 220 F.3d 954, 961 (8th Cir. 2000); *see also E.E.O.C. v. Wal-Mart Stores, Inc.*, 156 F.3d 989, 992 (9th Cir. 1998) ("We review *de novo* the district court's legal conclusion as to whether damages are available.").

"Emotional distress damages are not available under the FMLA," *Rodgers v. City of Des Moines*, 435 F.3d 904, 909 (8th Cir. 2006), but the ACRA permits

-13-

plaintiffs to recover emotional-distress damages, *see* Ark. Code § 16-123-107(b) and (c)(2)(A); *Odom v. Antennas, Inc. v. Stevens*, 966 S.W.2d 279, 282 (Ark. Ct. App. 1998). However, as Hot Springs points out, the ACRA does not provide for a cause of action based on FMLA retaliation. The ACRA prohibits intentional discrimination based on "race, religion, national origin, gender, or the presence of any sensory, mental, or physical disability," Ark. Code § 16-123-107(a), but notably does not prohibit discrimination on the basis of a person's use of FMLA leave, *see id.* Thus, Hot Springs argues that Jackson's FMLA retaliation claim does not support a corresponding claim under the ACRA, and therefore Jackson's ACRA claim cannot provide a basis for emotional-distress damages. In response, Jackson asserts that Hot Springs misunderstands the theory of his ACRA claim; namely, that it is not based on retaliation under the FMLA but rather on retaliation under the ADA. More specifically, Jackson claims that leave under the FMLA also can be a reasonable accommodation for a disability under the ADA, and therefore the facts that supported his FMLA retaliation claim also support an ACRA claim based on ADA retaliation. In this case, though, Jackson's ACRA claim was submitted to the jury based solely on an FMLA-retaliation theory rather than on an ADA-retaliation theory. The relevant jury instruction states:

> Your verdict must be for the plaintiff on the plaintiff's retaliation claim under the Family Medical Leave Act and the Arkansas Civil Rights Act if all of the following elements have been proved by a preponderance of the evidence: First, the plaintiff received treatment and was able to return to work and perform the functions of his job . . . at the time(s) when the plaintiff applied for the welder/machinist job; Second, the defendant refused to hire the plaintiff to the same or an equivalent position held by the plaintiff when the absence began. Third, the plaintiff's use of medical leave was a factor in the defendant's decision to not hire the plaintiff.

-14-

Jackson did not request, and the district court did not give, a jury instruction for an ACRA claim based on ADA retaliation. While the jury found for Jackson on his ACRA claim for retaliation, it did so based solely on the elements of a claim for FMLA retaliation, which is not a viable basis for an ACRA claim. *See* Ark. Code § 16-123-107(a). Therefore, the ACRA claim submitted to the jury does not provide a basis for the jury's award of emotional-distress damages. Accordingly, we affirm the district court's vacatur of the jury's award for emotional-distress damages.

### 3. Denial of Liquidated Damages under the FMLA

Jackson argues that the district court should have awarded him liquidated damages under the FMLA. We review the district court's decision to deny statutory liquidated damages for abuse of discretion. *Thorson v. Gemini, Inc.*, 205 F.3d 370, 383 (8th Cir. 2000). "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Menz v. New Holland N. Am., Inc.*, 440 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Plaintiffs' Baycol Steering Comm. v. Bayer Corp.*, 419 F.3d 794, 802 (8th Cir. 2005)).

Under the FMLA, an employer "'shall be liable to any eligible employee affected [by a violation of the Act] . . . [for] an additional amount as liquidated damages equal to the sum of the amount' of other damages and interest awarded pursuant to § 2617(a)(1)(A)(i) and (ii)." *Hite*, 446 F.3d at 868 (alterations in original) (quoting 29 U.S.C. § 2617(a)(1)(A)(iii)). However, "[i]f the employer can 'prove[] to the satisfaction of the court that the' FMLA violation 'was in good faith and that the employer had reasonable grounds for believing' that its behavior was not in violation of the FMLA, then the court in its discretion may decline the award of liquidated damages." *Thorson*, 205 F.3d at 383 (second alteration in original) (quoting § 2617(a)(1)(A)(iii)). Importantly, "[t]he district court should exercise its discretion 'consistently with the strong presumption under the statute in favor of

-15-

doubling.'" *Hite*, 446 F.3d at 868-69 (quoting *Shea v. Galaxie Lumber & Constr. Co.*, 152 F.3d 729, 733 (7th Cir. 1998)).

To avoid a liquidated damages award, Hot Springs bore the burden of establishing that it acted with subjective good faith and that it had an objectively reasonable belief that its conduct did not violate the law. *See id.* at 868. "Showing good faith when a jury has determined intentional retaliation is a very high bar to clear, if indeed it can be." *Id.* at 869. Here, despite finding that Hot Springs did not rehire Jackson because he took FMLA leave, the jury found that Hot Springs acted with good faith when it did not rehire Jackson. However, whether to award liquidated damages is committed to the discretion of the trial court, *see Hite*, 446 F.3d at 868-69, and therefore, the jury's finding was only advisory, *see Square Liner 360, Inc. v. Chisum*, 691 F.2d 362, 378-79 (8th Cir. 1982). While the district court recognized that this finding was advisory, it nevertheless agreed with it, explaining only that the finding was consistent with the evidence at trial. Jackson argues, however, that the evidence does not support the district court's good-faith finding.

Based on the record and given the strong presumption in favor of liquidated damages, we conclude that the district court abused its discretion when it denied liquidated damages. In its response to Jackson's request that the district court award liquidated damages, Hot Springs did not point to any evidence that demonstrated it acted in good faith or with reasonable grounds for believing that its refusal to rehire Jackson did not violate the FMLA. And in its order denying Jackson's request, the district court summarily stated that "[Hot Springs] met its burden of establishing that it acted with subjective good faith and that it had an objectively reasonable belief [that] its conduct did not violate the law," without providing any factual support for this finding. Moreover, Hot Springs has not responded to Jackson's argument on appeal and, thus, has not provided us with any argument or evidence to support the district court's finding that Hot Springs acted in good faith and with reasonable grounds for believing that its failure to rehire Jackson was not in violation of the

FMLA. *Cf. Johnson v. Baptist Med. Ctr.*, 114 F.3d 789, 790 (8th Cir. 1997) ("We are under no duty to search a record . . . for evidence to support a party's arguments.").

The only evidence that we can reasonably discern from the record that could support a finding that Hot Springs acted in good faith and with a reasonable ground for believing that its decision not to rehire Jackson did not violate the FMLA would be Hot Springs's alleged reasons for not rehiring Jackson. These reasons, which were rejected by the jury, are insufficient to amount to good faith. *See Hite*, 446 F.3d at 868-69 ("Showing good faith when a jury has determined intentional retaliation is a very high bar to clear . . . ."). The jury's rejection of Hot Springs's reasons for refusing to rehire Jackson is a finding that is binding on the court, *see Arban v. West Pub. Corp.*, 345 F.3d 390, 408 (6th Cir. 2003), whereas the jury's good-faith finding was only advisory, *see Square Liner 360, Inc.*, 691 F.2d at 378-79. Thus, a good-faith finding based on Hot Springs's alleged reasons for its decision not to rehire Jackson would be an abuse of discretion because such a finding would disregard the jury's nonadvisory finding of intentional retaliation. *See Arban*, 345 F.3d at 408 (holding that the district court abused its discretion in denying liquidated damages because, in its good-faith finding, the court relied on employer's nonretaliatory reason for its conduct, which the jury rejected by finding intentional retaliation). Because Hot Springs cites no evidence in support of the district court's finding that it acted in good faith in refusing to rehire Jackson and because we can find none, we reverse the district court's denial of liquidated damages.

## III. Conclusion

For the aforementioned reasons, we reverse and remand the district court's denial of liquidated damages and affirm in all other respects.

_____

-17-