# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2160
_____

Aubree Ebersole

*Plaintiff - Appellant*

v.

Novo Nordisk, Inc.; Murty Sitarama

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau
_____

Submitted: January 14, 2014
Filed: July 10, 2014
_____

Before LOKEN, MURPHY, and SMITH, Circuit Judges.
_____

SMITH, Circuit Judge.

Aubree Ebersole sued her former employer, Novo Nordisk, Inc. ("Novo"), and her former supervisor at Novo, Murty Sitarama (collectively, "defendants"), alleging that Novo terminated her in violation of the Family and Medical Leave Act (FMLA).

The district court[1] granted summary judgment to the defendants. On appeal, Ebersole avers that the district court erred in granting the defendants summary judgment because genuine issues of material fact remain as to Novo's motivations for terminating her. We affirm.

## I. *Background*

The parties stipulated to most of the facts for the district court's summary-judgment determination. Novo is a pharmaceutical company that employs sales representatives who market Novo's products to doctors. Novo hired Ebersole in March 2007 as one of these representatives. Ebersole worked in the Poplar Bluff District, which covered roughly the southern third of Missouri. Novo employed approximately eight to ten representatives in each district, including the Poplar Bluff District ("District").

Ebersole was diagnosed with rheumatoid arthritis at 15. Her former direct supervisor, Joe Reichard, opined that Ebersole never tried to hide her condition; in fact, coworkers throughout the District knew of her condition. In January 2009, Ebersole contacted Reichard about taking medical leave for arthritis treatment. She eventually took leave from January 30, 2009, until March 6, 2009, when Ebersole's physician released her to return to work with no restrictions.

While Ebersole was on leave, Novo terminated Reichard's employment in February 2009. In April 2009, Murty Sitarama became Reichard's permanent replacement. During Sitarama's and Ebersole's first "field ride" together in which they drove for several hours through rural Missouri, Sitarama asked Ebersole about her arthritis and medication. During the conversation, Ebersole felt pressured by Sitarama into discussing her condition.

---

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri.

Chris Connell, Reichard's and Sitarama's supervisor, never asked Ebersole directly about her medical condition despite seeing Ebersole on a quarterly basis. Connell did speak with Reichard on a few occasions about Ebersole's condition, asking, "Why is Aubree on leave?" and "What's going on with Aubree?" Ebersole discovered Connell's interest in her medical condition while conversing with Sitarama during the initial field ride. Ebersole characterized her conversation with Sitarama as follows:

> [Her knowledge about Connell's interest] was based on my conversations with Murty. Murty saying Chris Connell—I'm aware of your medical condition—medical condition and your medical leave, and Chris Connell wants to know if you're the effective rep or [another rep] is, put together this list and prove who—you know, is it the sick rep or is it the other rep, who is it.

Shortly after Sitarama replaced Reichard in April 2009, another representative in the District, Jake Martin, informed Sitarama that a Houston, Missouri physician had relocated his practice to Joplin, Missouri. Subsequently, another Novo employee informed Sitarama that this particular doctor had actually moved his practice to Joplin one year earlier. Sitarama determined that Martin had falsified a "call" (visit) to this doctor a few months earlier. Sitarama's examination of the call logs also revealed that Ebersole falsified three calls to this same doctor within the previous six months. Sitarama then investigated these falsified calls throughout the summer.

Novo's marketing policy and practice includes development of a "call plan" of physicians for its representatives. Representatives may then make sales calls to physicians on the call plan. Ebersole's call plan consisted of approximately 100 physicians, including the physician who relocated his practice to Joplin. Each time that representatives meet with a physician on their call list to promote a Novo product, Novo instructs the representative to record the meeting as a "call." Although not defined precisely, Ebersole understood a "call" to mean that she "had a list of

practitioners that was [her] responsibility to work with face-to-face and detail those doctors and get them to commit to writing Novo Nordisk products." Sitarama and Reichard both explained that a call required face-to-face interaction with one of the physicians on the call list. According to Novo policy, representatives were not to record a call when they met with another member of the physician's staff; the meeting had to be with the physician on the list or it did not constitute a "call."

Novo policy notwithstanding, Ebersole traveled to this particular doctor's office in Houston and met with his nurse practitioner instead. She claims that the doctor was unavailable, so she decided to meet with the nurse practitioner because nurse practitioners have the authority to prescribe Novo products as well. Ebersole admits that this nurse practitioner was not on her call list; however, she claims that Reichard occasionally allowed her to record these interactions as calls because Ebersole had to travel so far to the doctor's office. Reichard acknowledged that Ebersole's listing a meeting with a nurse practitioner as "a call" clearly violated Novo policy.

In 2007 and 2009, Ebersole acknowledged that she received, read, and understood a copy of Novo's Handbook/Code of Conduct ("Code") that contained Novo's policies and procedures. The content of the two versions did not differ in any material way. The 2009 Handbook reflected Novo's policy regarding call falsification, stating:

Falsification or misrepresentation of any Company documents or reports is considered misconduct. Such falsification includes, but is not limited to:

* * *

Reporting a call that has not been made or on a date other than that on which the call was actually made;

Reporting a visit to a customer that does not meet the definition of a call (as defined by each Division's Call Reporting System)[.]

The Handbook also stated that Novo could take "[a]ppropriate disciplinary action, up to and including termination" against an employee who violated Novo policy. Despite the Code's emphasis on progressive discipline, it also provided that employees were subject to immediate termination for "dishonesty and/or misstatement or falsification of . . . company business records."

Ebersole alleges that Sitarama warned her around July 2009 that she was not to take any more vacation leave that year. The following month, Ebersole requested three vacation days for personal reasons unrelated to her arthritis. Sitarama approved her request; however, the day before Ebersole was to begin this three-day vacation, Sitarama and Connell met with both Ebersole and Martin and terminated them for call falsification. In 2009, Novo fired six other representatives from the District for call falsification. They also fired dozens more representatives throughout the country for the same reason.

Ebersole sued Novo and Sitarama in February 2011, alleging retaliation under the FMLA and violations of the Americans with Disabilities Act.[2] The district court granted the defendants' motion for summary judgment on all counts. The district court determined that Ebersole failed to establish any direct evidence of discrimination. Furthermore, under the *McDonnell Douglas*[3] burden-shifting analysis, the district court determined that Ebersole failed to establish that Novo's legitimate reason for firing Ebersole was pretextual. The court rejected her attempt to use as comparators two other representatives who allegedly falsified calls but who Novo never

_____

[2]Ebersole appeals the district court's decision to grant the defendants summary judgment only as to her FMLA claim.

[3]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

-5-

investigated. The district court determined that the better comparator was Martin because he was most similarly situated to Ebersole. Furthermore, the court considered Ebersole's subjective motivations in recording the calls and Reichard's alleged permission irrelevant because all parties knew that her actions violated Novo policy.

## II. *Discussion*

Ebersole contends on appeal that the district court erred in granting the defendants' motion for summary judgment. She argues that "[t]he trial court erred because it gave Appellees favorable inferences, resolved who it believed, and discarded legally relevant evidence."

"We review de novo a district court's grant of summary judgment." *Rester v. Stephens Media, LLC*, 739 F.3d 1127, 1130 (8th Cir. 2014) (citation omitted). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We "consider[ ] the facts in the light most favorable to [Ebersole] and giv[e] her the benefit of all reasonable inferences in the record." *Holmes v. Trinity Health*, 729 F.3d 817, 821 (8th Cir. 2013) (citation omitted). There is no discrimination-case exception to a district court's power to grant summary judgment. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc).

"The FMLA entitles an employee to twelve workweeks of leave during any twelve-month period if he or she has a serious health condition that makes the employee unable to perform the functions of the position of such employee." *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1015 (8th Cir. 2013) (quotations and citations omitted). We recognize two types of claims under the FMLA: interference and retaliation claims. *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 958 (8th Cir. 2012). "In a retaliation claim, the employee alleges that the employer discriminated against her for exercising her FMLA rights." *Id.* (quotation and citation omitted).

Consequently, "an employer may not consider an employee's use of FMLA leave as a negative factor in an employment action." *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 865 (8th Cir. 2006) (quotation and citation omitted). "However, an employee who requests FMLA leave has no greater protection against termination for reasons unrelated to the FMLA than she did before taking the leave." *Bone*, 686 F.3d at 958 (quotation, alteration, and citation omitted). As a result, if the employer demonstrates that it would have terminated the employment had the employee not exercised her FMLA rights, then the employer faces no liability. *Id.* at 958–59.

## A. *Direct Evidence*

Plaintiffs may demonstrate discrimination by introducing direct or indirect evidence. *See Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004). Direct evidence reveals a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action. *Torgerson*, 643 F.3d at 1044. Direct evidence must be strong and clearly point to an illegal motive as the basis for the adverse employment action. *Bone*, 686 F.3d at 953.

Ebersole argues that she submitted sufficient evidence of direct discrimination because "it was more likely than not that discriminatory animus fueled Appellant's termination." She contends that Sitarama and Connell discussed her medical condition on several occasions. As a result of these conversations, they decided to warn Ebersole not to take any more vacation time that year. When she attempted to take vacation time, they then agreed to terminate her because they believed that she had taken too much leave. The district court rejected Ebersole's contention. The district court reasoned that Ebersole failed to show that Sitarama's and Connell's discussions of her health showed discriminatory animus.

We agree. Sitarama's and Connell's conversations could not establish to a reasonable jury that they acted based on a discriminatory animus against Ebersole for

taking FMLA leave. Sitarama's questions about her medical condition are clumsy but consistent with a new supervisor who was attempting to familiarize himself with a new subordinate. Neither Connell nor Sitarama made any direct or indirect threats against Ebersole based on use of FMLA leave. Furthermore, Sitarama's warning that Ebersole take no additional *vacation*, not *FMLA*, leave was a reasonable, face-neutral employer request. Ebersole has failed to demonstrate evidence that is "strong" and "clearly point[s] to the presence of an illegal motive" as the basis for her termination. *See id.* (quotation and citation omitted).

### B. *Indirect Evidence*

We employ the *McDonnell Douglas* burden-shifting framework to determine whether the plaintiff has shown sufficient indirect evidence of illegal discrimination. *Chappell v. Bilco Co.*, 675 F.3d 1110, 1116–17 (8th Cir. 2012). Under this framework:

> The employee must first establish a prima facie case, which creates a presumption of unlawful retaliation. The burden then shifts to the employer to articulate a legitimate, non-retaliatory reason for its action. If the employer meets this burden of production, the employee must then identify evidence sufficient to create a genuine issue of material fact whether the employer's proffered explanation is merely a pretext for unlawful retaliation.

*Sisk v. Picture People, Inc.*, 669 F.3d 896, 899 (8th Cir. 2012) (quotations, alteration, and citations omitted). To establish a prima facie case, the plaintiff must "show that she exercised rights afforded by the Act, that she suffered an adverse employment action, and that there was a causal connection between her exercise of rights and the adverse employment action." *Phillips v. Mathews*, 547 F.3d 905, 912 (8th Cir. 2008) (quotation and citation omitted).

Employees may show the causal link based on the temporal relation of the protected activity and the adverse employment action. *Hite*, 446 F.3d at 866. "The mere coincidence of timing, however, is rarely sufficient to establish the causation element." *Id.* (citation omitted). The temporal proximity must be extremely close to establish the causal connection without other evidence of discriminatory animus. *Id.* Although we have not drawn a definitive line, we have determined that a one-month or two-month lag is too long absent other evidence. *See Sisk*, 669 F.3d at 901 (collecting cases).

The employer's responsibility to present proof of a non-discriminatory, legitimate justification for its action is not an onerous task. *Bone*, 686 F.3d at 954. This court has "consistently held that violating a company policy is a legitimate, non-discriminatory rationale for terminating an employee." *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006) (citation omitted). The next step in the *McDonnell Douglas* framework requires the plaintiff to demonstrate that the employer's legitimate, non-retaliatory rationale is really a pretext for discrimination. *Hite*, 446 F.3d at 867. To demonstrate pretext, the employee must show that the employer's proffered reason is "unworthy of credence." *Id.* (quotation and citation omitted). To show pretext, the plaintiff must demonstrate more than at the prima facie stage because, at the pretext stage, the evidence is viewed in light of the employer's justification. *Chappell*, 675 F.3d at 1117. An employee may demonstrate pretext in multiple ways:

> An employee may prove pretext by demonstrating that the employer's proffered reason has no basis in fact, that the employee received a favorable review shortly before he was terminated, that similarly situated employees who did not engage in the protected activity were treated more leniently, that the employer changed its explanation for why it fired the employee, or that the employer deviated from its policies.

*Phillips*, 547 F.3d at 913.

In proving pretext by showing that similarly situated employees were treated more leniently, the plaintiff's "comparators" must be "similarly situated in all relevant respects." *Burton v. Ark. Sec'y of State*, 737 F.3d 1219, 1229 (8th Cir. 2013) (quotation and citations omitted). The comparators "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Id.* at 1230 (quotation and citations omitted). The comparators need not have committed the exact same offense but must have engaged in conduct "of comparable seriousness." *Id.* at 1231 (quotation and citation omitted). "When different decision-makers are involved, two decisions are rarely similarly situated in all relevant respects." *Britton v. City of Poplar Bluff, Mo.*, 244 F.3d 994, 998 (8th Cir. 2001) (quotations and citations omitted).

Ebersole contends that she presented enough indirect evidence that a reasonable person could determine that Novo's stated reason for terminating her was pretext for unlawful discrimination. Applying the *McDonnell Douglas* framework, the district court noted that Ebersole failed to demonstrate a causal link based on the temporal relation of her termination to her leave request. Seven months elapsed between her decision to take FMLA leave and her termination. However, the district court did conclude that Ebersole established a prima facie case of discrimination based on the conversations between Connell and Sitarama. Nevertheless, the district court determined that Novo presented a legitimate, non-discriminatory reason for Ebersole's termination—violation of company policy. The district court then determined that Ebersole could not demonstrate that Novo's stated reason for terminating Ebersole was pretextual.

We agree with the district court. First, Ebersole cannot demonstrate pretext by relying on temporal proximity alone, for seven months elapsed from the time that she exercised FMLA rights until her termination. *See Sowell v. Alumina Ceramics, Inc.*, 251 F.3d 678, 685 (8th Cir. 2001) ("[T]he seven-month time lapse between the

protected activity and the alleged retaliatory act is, without more, too long for the incidents to be temporally—and therefore causally—related." (citation omitted)).

Beyond mere timing, Ebersole attempts to demonstrate pretext by comparing two other representatives in the District who Novo never investigated for call falsification despite warnings from Reichard. Because Novo did not investigate those two representatives, Ebersole contends that Novo treated her more harshly than these similarly situated employees. She also argues that Novo did not have a zero-tolerance policy against call falsification as it alleges. However, "distinguishing circumstances" exist that preclude us from considering these two representatives as valid comparators. *See Burton*, 737 F.3d at 1230. The only evidence of potential call falsification stemmed from Reichard, who admittedly had an ax to grind with these two employees after they gave him poor reviews. Furthermore, Reichard never transmitted a completed investigation of these employees to his superiors because he was terminated for unrelated reasons before he could do so. He stated merely that he "was moving on [his] low performers" and suspected them of potential call falsification. Reichard made these claims in an email that he sent Novo following his termination where he attempted to convince Novo that Novo terminated him wrongfully and that Novo owed him more severance pay. The statements regarding call falsification were buried inconspicuously within his plea for higher severance pay. Furthermore, Reichard never identified the suspected employees to Novo. Consequently, Reichard never sufficiently alerted Novo to actual evidence of call falsification by these two alleged comparators.

Martin is a closer comparator. He falsified a call to the same doctor, worked in Ebersole's District, answered to the same supervisors, and committed his offense at a similar time. *See id*. Novo terminated him on the same day as Ebersole. Furthermore, Novo terminated six other representatives in the District and many others throughout the country that year for the same offense. As a result, Ebersole has failed to demonstrate that Novo's reason for terminating her was pretextual. Novo has

-11-

adequately demonstrated that it would have terminated Ebersole without her exercise of FMLA rights. *See Bone*, 686 F.3d at 958.

Ebersole does not adduce enough evidence to rebut Novo's legitimate, nondiscriminatory reason for her termination. Specifically, Reichard's testimony that he suspected that Novo discriminated against him for taking FMLA leave is unhelpful because Reichard is not a valid comparator. He answered to a different supervisor and was terminated for a completely different offense. *See Burton*, 737 F.3d at 1230; *Britton*, 244 F.3d at 998. Furthermore, we do not find persuasive Ebersole's attempt to demonstrate pretext by emphasizing that Novo terminated her one day before she was scheduled to take *vacation*, not FMLA, leave.

Ebersole also contends that her situation strongly resembles the plaintiff's situation in *Hite* where we determined that evidence supported a jury's finding of retaliation under the FMLA. *See Hite*, 446 F.3d at 861. Ebersole argues that she and Hite are similar because their employers (1) targeted and harassed them following their FMLA leave, (2) threatened that additional leave would result in termination, (3) ultimately terminated them for taking leave, and (4) claimed that termination resulted from a violation of company policy despite their direct supervisors' approval. Ebersole and Hite also presented other employees who contended that the employers retaliated against them for taking leave. While the cases do share similarities, *Hite* is materially distinguishable. First, Hite's supervisor explicitly told her that she did not look sick and that she needed to be at work. *Id.* at 862. Second, Hite's supervisor regularly complained that FMLA was bad for the company and about Hite's use of FMLA leave. *Id.* Third, Hite's supervisor punished her for taking FMLA leave by transferring Hite to more difficult labor following her FMLA leave. *Id.* Fourth, her supervisor explicitly threatened Hite that he would transfer her permanently to more difficult tasks if she continued to take FMLA leave. *Id.* He then threatened to terminate her if she took more FMLA leave. *Id.* Finally, Hite's supervisor regularly disciplined her for violating minor company policies despite his lack of discipline for

the same offenses committed by other similarly situated employees. *Id.* at 863. This case is not *Hite*.

Finally, Ebersole asserts that Novo should not have fired her because Reichard authorized the calls she made in violation of company policy. This argument also fails. Reichard admitted that Ebersole's activities undoubtedly violated Novo policy. Reichard did not possess the power to unilaterally amend Novo policy or the Code. As we stated in *Johnson v. Ready Mixed Concrete Co.*:

> In one of our most oft-quoted passages, we said in 1994 that "[f]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions." *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 973 (8th Cir.1994) (internal quotations omitted). One reason we emphasize this point is that a number of plaintiffs present a sympathetic situation in which the employer's judgment in imposing discipline may appear poor or erroneous to outsiders. It is tempting to think that the role of the federal courts is to offer a remedy in that sort of case. Whether we might believe that [the employer] was unduly harsh in its treatment of [the plaintiff], however, is not a matter to be considered in deciding this appeal. Our authority is to determine only whether there is a genuine issue for trial on the question whether [the employer] discharged [the employee] because of his race.

424 F.3d 806, 812 (8th Cir. 2005) (first alteration in original). Thus, whether a prudent employer would have treated Ebersole's actions more leniently because of Reichard's authorization is not our call. Ebersole has not produced sufficient probative evidence that her termination was the result of unlawful FMLA retaliation.

### III. *Conclusion*

For these reasons, we affirm the judgment of the district court.

_____