# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-1456
_____

Wendy Thompson

*Plaintiff - Appellant*

v.

Kanabec County; Mille Lacs County

*Defendants - Appellees*

_____

No. 19-1988
_____

Wendy Thompson

*Plaintiff - Appellant*

v.

Kanabec County; Mille Lacs County

*Defendants - Appellees*

_____

Appeals from United States District Court
for the District of Minnesota

_____

Submitted: March 11, 2020

Filed: May 5, 2020

_____

Before ERICKSON, GRASZ, and KOBES, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Wendy Thompson sued her former employer, Kanabec County, for allegedly interfering with her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and then allegedly retaliating against her for asserting those rights. Thompson also alleged multiple state law claims against Kanabec County and Mille Lacs County. The district court[1] granted summary judgment in favor of Kanabec County on Thompson's FMLA claim, declined to exercise supplemental jurisdiction over Thompson's state law claims, and taxed costs in favor of Kanabec County. We affirm.

## I.    Background

In reviewing the district court's grant of summary judgment, we describe the facts in the light most favorable to Thompson.[2]  Thompson resides in Mille Lacs County, Minnesota. She is a licensed registered nurse who began her employment in October 1991 in neighboring Kanabec County, Minnesota. She was the Director

_____

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

[2]Thompson requests in her reply brief that Mille Lacs County's entire statement of the case be stricken because the facts recited do not address issues relevant to Mille Lacs County. The statements at issue cite to evidence in the record and while they provide unnecessary detail since the merits of the state law claims were not on appeal, the court's analysis of the issues on appeal was not prejudiced or otherwise influenced by these statements. We deny the request to strike as moot.

of Public Health for twenty-five years and also the Health and Human Services Director for the last ten years. As the Health and Human Services Director, Thompson reported directly to the Kanabec County Board ("Board"). Any decision about her employment required a majority vote of the five person Board. The County Coordinator, Patrick Christopherson ("Christopherson"), managed the day-to-day personnel operations of Kanabec County. He reported directly to the Board. Although Christopherson advised the Board on personnel issues, he lacked termination authority.

Thompson is the mother of eight children. In "mid-2016," Thompson's oldest daughter, who had moved out of the house and was estranged from the family, allegedly told Thompson that she had been sexually abused at least eight years earlier by her father, Thompson's husband. The daughter later reported the alleged abuse to authorities. On September 28, 2016, Thompson's husband was arrested and charged in Mille Lacs County with kidnapping and multiple counts of criminal sexual conduct. Mille Lacs County opened a child-protection investigation of both Thompson and her husband. As to Thompson, the investigation pertained to "threatened sexual abuse"[3] of the minor children that were still residing with her.

Upon the advice of outside counsel, Thompson was placed on paid administrative leave until "the investigation into [her] alleged misconduct [was] concluded." Thompson was required to turn in her cell phone and iPad and told that

---

[3]Minnesota law pertaining to the reporting of maltreatment of minors defines "threatened injury" as "a statement, overt act, condition, or status that represents a substantial risk of physical or sexual abuse or mental injury." Minn. Stat. § 626.556, subd. 2 (p). It includes, in part, "exposing a child to a person responsible for the child's care . . . who has: (1) subjected a child to, or failed to protect a child from, an overt act or condition that constitutes egregious harm." Id.

"No Public Health or Family Services should be provided by [Thompson] to any Kanabec County citizens or staff until further notice from the County Board."

On October 21, 2016, Kanabec County's outside counsel interviewed Thompson as part of the County's internal investigation. Topics included Thompson's husband's previous marriage, his criminal history, allegations about her husband's pending criminal complaint, allegations made during a closed 2001 Mille Lacs County investigation, and information about what she witnessed or knew about any abuse of her children. Outside counsel prepared a report memorializing the discussion as well as her findings.

During a closed meeting on November 2, 2016, outside counsel provided the Board with their findings and recommended that the Board terminate Thompson. Counsel also advised the Board that the options it had before it included demotion, retirement, resignation, or delay the decision. The Board chose to delay its decision pending a determination in the child-protection investigation. Christopherson notified Thompson that outside counsel had recommended termination, "but if the child protection investigation concluded in her favor, the Board would probably reinstate her." Christopherson told Thompson that because of Thompson's request to postpone the Board's decision, Thompson's paid administrative leave status was changed to paid time off ("PTO"). Thompson denied that she made a continuance request.

On November 18, 2016, Thompson learned that she needed surgery. She notified Christopherson on November 21, 2016, that she was under a physician's care and required surgery "in the near future." The next day, Mille Lacs County issued its determination, finding maltreatment against Thompson for "threatened sexual abuse" of her two minor children. The determination concluded that Thompson, as a mandatory reporter, had an obligation to report her daughter's allegations of sexual

abuse to authorities. Thompson received the determination notice on November 25, 2016, and she made a timely request for reconsideration.

On December 7, 2016, Thompson notified Christopherson of the maltreatment determination and her request for reconsideration. That evening, Christopherson called Thompson to advise her that the Board scheduled a special session on December 16, 2016, to discuss the maltreatment determination. Christopherson told Thompson that the Board would allow her to resign in lieu of termination. Thompson responded that she did not know what she had done to be terminated. She informed Christopherson that she had surgery scheduled for December 12, and that her doctor had recommended four weeks of leave.

On the morning of December 9, 2016, Thompson provided to Christopherson a copy of the maltreatment determination along with her request for reconsideration. Thompson requested an opportunity to speak to the Board about "her side of the story." The Board cancelled the special session due to Thompson's upcoming surgery and her request for FMLA. In an email to Kanabec County's outside counsel, Christopherson accused Thompson of "playing games" and expressed confidence that the Board would grant him the authority to execute a "resignation/termination" resolution that he had previously asked counsel to draft.

On December 16, 2016, Mille Lacs County denied Thompson's request for reconsideration of the maltreatment determination.[4] On December 19, 2016, a police officer served Thompson with notice that the Board would address her employment status during a closed meeting on December 21, 2016. The notice stated that Thompson's request for FMLA did not change the fact that the Board had been considering termination since October. It further stated that if the Board decided not

_____

[4]On February 23, 2017, Mille Lacs County reversed the maltreatment determination.

-5-

to terminate her employment or postponed making a decision, Thompson's FMLA paperwork would be processed.

On December 20, 2016, Thompson emailed Christopherson, requesting that the meeting be postponed. Thompson expressed concern about interference with her FMLA, and alleged that Kanabec County was discriminating against her because of her marital status and possibly her religion. She also emailed and hand-delivered a similar letter to the Board. The Board declined to postpone a decision on Thompson's employment status.

After denying the continuance request, Kanabec County's outside counsel spoke with Thompson's attorney on the telephone. That evening, Thompson's attorney sent an email to Kanabec County's outside counsel thanking her for the call "in which [they] discussed the County's intent to proceed with terminating [Thompson's] employment." Thompson's attorney stated that she had relayed the suggestion of resignation in lieu of termination to Thompson and that Thompson was "retiring from her position at Kanabec County, effective immediately." The County's outside counsel responded with a request that Thompson submit a resignation letter for the Board to accept. That night, at around 8:00 p.m., Thompson emailed Christopherson a statement that she was retiring from her position, effective January 10, 2017. The Board accepted Thompson's resignation during its meeting on December 21, 2016.

Thompson alleged in her complaint that Kanabec County interfered with her exercise of rights protected by the FMLA, and then retaliated against her for asserting those rights. She also alleged state law claims for marital discrimination under the Minnesota Human Rights Act, a violation of the Minnesota Government Data Practices Act, and wage payment violations against Kanabec County, as well as aiding and abetting marital discrimination under the Minnesota Human Rights Act, a violation of the Minnesota Government Data Practices Act, and tortious interference

with a contract against Mille Lacs County. The parties filed cross-motions for summary judgment.

The district court noted that while it appeared Thompson was not "treated with the dignity or respect to which she was entitled as a long-time public servant, or as a human being," she failed to establish that Kanabec County had interfered with her FMLA rights or retaliated against her for exercising those rights. The court dismissed the federal claim with prejudice, declined to exercise supplemental jurisdiction over the state law claims, and dismissed the state law claims without prejudice. The court also awarded costs to Kanabec County, as the prevailing party, in the amount of $2,877.80.

## II. Discussion

We review the grant of summary judgment *de novo*, viewing the facts and drawing all inferences in the light most favorable to Thompson. RSA 1 Ltd. P'ship v. Paramount Software Assocs., Inc., 793 F.3d 903, 906 (8th Cir. 2015). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The FMLA entitles eligible employees to twelve workweeks of unpaid leave during a twelve-month period under certain enumerated circumstances. 29 U.S.C. § 2612(a)(1). One of the permissible circumstances is the development of "a serious health condition that makes the employee unable to perform the functions of [her] position." Id. The FMLA allows an employee to bring a private right of action if the employer engages in conduct in violation of the Act, which includes interfering with an employee's exercise of her rights, discharging an employee because of the exercise of her rights, or otherwise discriminating against an employee based on the exercise of her rights. 29 U.S.C. §§ 2615, 2617(a).

*1.     Interference*

Thompson asserts that Kanabec County interfered with her FMLA rights when it did not act on her FMLA leave request, asked her to do work while on leave, failed to give her notice of her rights under the FMLA, and forced her to choose between FMLA leave and attending a Board meeting regarding her employment status. Because the Board refused to postpone discussion of her employment status at its December 21, 2016, meeting, Thompson felt she had no other viable option other than to submit her notice of retirement on December 20, 2016.

To prevail on an interference claim, an employee must show she was (1) entitled to a benefit under the FMLA, (2) the employer "interfered with" that entitlement, and (3) the reason for the denial was connected to the employee's FMLA leave. Massey-Diez v. Univ. of Iowa Cmty. Med. Servs., Inc., 826 F.3d 1149, 1160 (8th Cir. 2016) (citation omitted). "Even if successful on this front, a claim for interference will fail unless the employee also shows that the employer's interference prejudiced the employee as the result of a real, remediable impairment of her rights under the FMLA." Id. (citing Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89–90 (2002)).

Thompson has shown no prejudice resulting from Kanabec County's delay in acting on her FMLA request or its failure to give her notice of her FMLA rights. Thompson was already on administrative leave when she requested FMLA. Even if Thompson had received proper notice of her rights and Kanabec County acted immediately on her FMLA request, Kanabec County would have required Thompson to exhaust her PTO before placing her on unpaid leave. Because Thompson was on PTO when she requested FMLA and remained on PTO until she resigned, Thompson cannot show that she suffered prejudice as a result of Kanabec County's failure to provide proper notice or its delay in processing her FMLA request. See Massey-Diez,

826 F.3d at 1160 (explaining that an employee is required to show the employer's interference with FMLA rights prejudiced the employee).

As to Thompson's next claim that Kanabec County interfered with her FMLA rights by requiring her to perform work while on medical leave, "the FMLA does not prohibit 'an employee's voluntary and uncoerced acceptance (not a condition of employment) of a light duty assignment while recovering from a serious health condition.'" Massey-Diez, 826 F.3d at 1158 (quoting 29 C.F.R. § 825.220(d)). The "assignments" at issue in this case included participating in telephone calls, supplying documentation regarding the child-protection investigation, providing information required under the FMLA, responding to meeting notices, and deciding whether to attend a meeting about her employment status. We have explained that there is "a distinction between, on the one hand, receiving nondisruptive communications such as short phone calls requesting the employee to pass on institutional knowledge or property as a professional courtesy, and, on the other hand, requiring the employee to complete work-related tasks or produce work product." Id. at 1158–59 (citations omitted). Thompson was neither asked to nor required to complete work-related tasks. In fact, she was prohibited from performing such tasks when she was placed on leave. Instead, the activities Thompson was asked to do related to the underlying child-protection investigation, her FMLA request, and her employment status. Kanabec County did not impose upon Thompson work-related duties that materially interfered with her medical leave. Kanabec County was entitled to summary judgment on Thompson's interference claim.

### 2. Discrimination

Thompson asserts the district court ignored "strong evidence" that Kanabec County acted in a retaliatory manner when, in response to her doctor's note documenting a serious medical need, Christopherson wrote to the County's outside counsel:

-9-

I'm attaching both letters from her Dr...of which I JUST received yesterday, even though one is dated 11/18 and the other 12/7. This has been a Board request/directive to me to give her the opportunity to speak; this is why my hands have been tied. But, I will say, I'm fairly certain that when I bring this up to them on Wednesday it will be the last straw, and I'm fairly certain they will bestow upon me the authority I requested to execute this resignation/termination per the resolution you drafted me last week. That being said, when you review the doctor's note regarding her surgery, let me know if we should just process her under FMLA or not? If something else comes up along the way, I would like to get the clock ticking so to speak sooner rather than later.

Ann, I am completely fed up with dealing with this and I have articulated that to my Board, Board Chair, and our County Attorney. W is playing games now, and the sooner we are finished the better. I apologize if I was short yesterday over email, but as I said FED UP!

(Email dated December 15, 2016).

Although the parties and the district court refer to Thompson's claim as a retaliation claim, it is "more properly characterized" as a discrimination claim. Jackson v. City of Hot Springs, 751 F.3d 855, 858 n.1 (8th Cir. 2014) (citing Pulczinski v. Trinity Structural Towers, Inc., 691 F.3d 996, 1005 (8th Cir. 2012)). Thompson may demonstrate FMLA discrimination by introducing direct or indirect evidence. "Direct evidence provides a strong causal link between the alleged discriminatory bias and the adverse employment decision." McCullough v. Univ. of Ark. For Med. Scis., 559 F.3d 855, 861 (8th Cir. 2009). "The bias, however, must be that of the decision maker and must relate to the decisional process." Massey-Diez, 826 F.3d at1160 (citing Doucette v. Morrison Cty., Minn., 763 F.3d 978, 986 (8th Cir. 2014)).

While cases finding direct evidence of discrimination typically involve statements or actions more blatant than Thompson has presented, even assuming the

email from Christopherson demonstrated a bias regarding Thompson's FMLA request, Christopherson did not have the authority to terminate Thompson. Only a majority vote of the Board could terminate Thompson's employment. As such, Thompson has failed to demonstrate a bias from a decision maker.

In the absence of direct evidence, we apply the familiar McDonnell Douglas framework, which first requires a plaintiff to demonstrate a *prima facie* case. Massey-Diez, 826 F.3d at 1161. To establish a *prima facie* case of FMLA discrimination, an employee must show: (1) she engaged in activity protected under the Act; (2) she suffered a materially adverse employment action; and (3) a causal connection existed between the employee's action and the adverse employment action. Id. (quoting Hite v. Vermeer Mfg. Co., 446 F.3d 858, 865 (8th Cir. 2006)).

Thompson has failed to raise a genuine issue of material fact on the second and third prongs. The adverse employment action Thompson asserts was constructive discharge. To prove constructive discharge, Thompson must show that Kanabec County created "working conditions [that were] so intolerable that a reasonable person in [her] position would have felt compelled to resign." Garrison v. Dolgencorp, LLC, 939 F.3d 937, 943 (8th Cir. 2019) (quoting Green v. Brennan, __ U.S. __, 136 S.Ct. 1769, 1776 (2016)). An employer's insensitive actions do not necessarily leave a reasonable employee with no choice but to resign. Id.

Thompson was not working in intolerable conditions at the time she resigned. Rather, Thompson had been on leave for over two months pending a determination in a child-protection investigation. The record demonstrates the Board elected to delay making a decision about Thompson's employment status until the child-protection investigation concluded. After the investigation was concluded and a maltreatment determination was issued, the Board gave notice to Thompson that it was going to resume discussion of Thompson's employment status. According to Thompson's own allegations in the complaint, Christopherson mentioned to

-11-

Thompson as early as December 7, 2016, that the Board would allow Thompson to resign. When Thompson asked if termination and resignation were her only options, Christopherson said they were not the only options.

The day before the Board was to meet about Thompson's employment status, the Board Chair "suggested" to Thompson that she could resign from her position in lieu of termination. Thompson has not shown that she was compelled to resign, or that resignation was her only option. Instead, the record demonstrates that Thompson elected to submit her resignation. Kanabec County's actions, although perhaps insensitive in light of the recency of her surgery, do not amount to "intolerable working conditions." Thompson cannot meet the second prong of her *prima facie* case, which requires a showing that she suffered a materially adverse employment action.

Thompson's *prima facie* case also fails because she cannot establish a causal connection between her FMLA request and the Board's choice to move forward with its meeting to decide her employment status. An employee's request for FMLA does not insulate her from employment decisions that are based on reasons other than FMLA usage. Ebersole v. Novo Nordisk, Inc., 758 F.3d 917, 923 (8th Cir. 2014). "[I]f the employer demonstrates that it would have terminated the employment had the employee not exercised her FMLA rights, then the employer faces no liability." Id. (citing Bone v. G4S Youth Servs., LLC, 686 F.3d 948, 958–59 (8th Cir. 2012)).

Kanabec County placed Thompson on administrative leave on October 4, 2016, the day the County discovered that Thompson was the subject of a child-protection investigation. On November 2, 2016, Christopherson told Thompson that the Board's recommendation was to terminate her employment, but that a final decision would be made once the child-protection investigation was concluded. It was not until November 21, 2016, that Thompson informed Christopherson that she needed surgery in "the near future." Consistent with the plan relayed to Thompson earlier, the Board

-12-

scheduled a meeting to discuss Thompson's employment status when it learned of the maltreatment determination. Thompson is entitled to "no greater protection against termination for reasons unrelated to the FMLA than she did before taking the leave." Estrada v. Cypress Semiconductor (Minn.) Inc., 616 F.3d 866, 871 (8th Cir. 2010). The undisputed sequence of events does not demonstrate a causal link between Thompson's FMLA request and the Board's decision to proceed with a meeting regarding whether to terminate Thompson's employment. The Board's actions were based on the maltreatment determination, not on Thompson's exercise of FMLA rights. Kanabec County was entitled to summary judgment on Thompson's discrimination claim.

### 3.     State Law Claims

We review a district court's decision to decline to exercise supplemental jurisdiction under the abuse of discretion standard. Zubrod v. Hoch, 907 F.3d 568, 580 (8th Cir. 2018). The Supreme Court has noted that when all federal law claims are dismissed, the balance of factors usually points toward declining to exercise jurisdiction over the remaining state law claims. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988). The factors include: judicial economy, convenience, fairness, and comity. Id. at 350. Thompson has pointed to "no factor that distinguishes this case from the usual case;" therefore, the balance of factors demonstrates that Thompson's state law claims properly belong in state court. Wilson v. Miller, 821 F.3d 963, 971 (8th Cir. 2016).

### 4.     Taxation of Costs

Thompson contends the district court abused its discretion in awarding costs to Kanabec County because Kanabec County was not a "prevailing party" and nearly all of the costs were incurred in defending against the state law claims that the state court will decide upon remand. Federal Rule of Civil Procedure 54(d)(1)

presumptively provides for the recovery of costs to the "prevailing party." In re Derailment Cases, 417 F.3d 840, 844 (8th Cir. 2005). "We review de novo the legal issues related to costs and review for abuse of discretion the actual award of costs." Dindinger v. Allsteel, Inc., 853 F.3d 414, 431 (8th Cir. 2017) (cleaned up).

The district court dismissed all of Thompson's claims – the federal claim with prejudice and the state claims without prejudice. We have defined "prevailing party" as "one 'in whose favor a judgment is rendered, regardless of the amount of damages awarded.'" Firefighter's Inst. for Racial Equality ex rel. Anderson v. City of St. Louis, 220 F.3d 898, 905 (8th Cir. 2000) (quoting Black's Law Dictionary 1145 (7th ed. 1999)). A defendant qualifies as a "prevailing party" under Rule 54(d) when the district court dismisses the plaintiff's federal claims and declines to exercise supplemental jurisdiction over the plaintiff's remaining state law claims. Jefferson v. Jefferson Cty. Pub. Sch. Sys., 360 F.3d 583, 591 (6th Cir. 2004). Judgment was rendered in favor of Kanabec County and Thompson has failed to provide any persuasive authority to overcome the presumption that costs are allowed as a matter of course to a prevailing party. See Janis v. Biesheuvel, 428 F.3d 795, 801 (8th Cir. 2005) (explaining the losing party bears the burden of overcoming the presumption that the prevailing party is entitled to costs, meaning that the losing party must "suggest a rationale under which the district court's actions constitute an abuse of discretion."). The district court did not err in taxing costs in favor of Kanabec County, nor did it abuse its discretion in the amount it taxed.

## III.  Conclusion

For the foregoing reasons, we affirm.

_____

-14-