# United States Court of Appeals

## For the Eighth Circuit

_____

No. 19-3783

_____

Thomas Lissick

*Plaintiff - Appellant*

v.

Andersen Corporation

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: November 18, 2020
Filed: May 6, 2021

_____

Before SHEPHERD, STRAS, and KOBES, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Thomas Lissick, an Andersen Corporation (Andersen) employee from 2000 to 2018, was terminated for violating lock-out, tag-out (LOTO) safety procedures. After his termination, Lissick sued Andersen, asserting eight claims. Lissick voluntarily dismissed four of those claims, and the district court[1] granted summary

---

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

judgment to Andersen on the remaining four. Lissick now appeals, claiming that the district court erred in granting summary judgment. Having jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

I.

Andersen manufactures windows and doors. As an Andersen employee, Lissick was responsible for maintaining and repairing equipment at one of Andersen's manufacturing facilities. For safety reasons, Andersen instructs employees involved in equipment maintenance and repairs to follow its LOTO safety protocol. This protocol requires the servicing employee to turn off power to and discharge all power sources from equipment prior to performing any maintenance or repairs. The protocol also mandates that the employee lock the equipment in an "off" position prior to performing that maintenance or repair. Further, Andersen's Safety Rules and Regulations Enforcement Guidelines (Enforcement Guidelines) recommend that supervisors terminate an employee following that employee's second LOTO safety protocol violation. In fact, the Guidelines do not provide a recommended disciplinary procedure for an employee's third LOTO violation because termination following a second violation is expected.

Andersen maintains that Lissick violated the LOTO protocol on three occasions and cites these violations as cause for Lissick's termination. Lissick's third violation, which allegedly occurred on January 3, 2018, is germane to this appeal. On that day, an Andersen employee and an Andersen supervisor observed Lissick violating the LOTO protocol. The supervisor who observed Lissick's violation emailed Lissick's supervisor, Thomas Fitzmorris, to alert him that Lissick had violated the LOTO protocol. Fitzmorris forwarded that email to his supervisor, Chris Weyer. Weyer forwarded the email to the human resources (HR) generalist assigned to the team, Monique Romane. Weyer notified Romane of Lissick's two prior LOTO protocol violations; expressed concern that Lissick's January 3 violation occurred only approximately three months after his second LOTO violation, for which he had been suspended; and requested that Romane ascertain whether Lissick

had in fact violated the protocol for a third time. Weyer advised that should Romane's investigation reveal that Lissick had violated the LOTO protocol for a third time, Weyer would recommend Lissick's termination based on the Enforcement Guidelines and his experience. Romane investigated Lissick's alleged violation for five days and, after interviewing multiple employees, as well as Lissick himself, concluded that Lissick had indeed violated the LOTO protocol. Following Romane's interview of Lissick, she and Fitzmorris suspended Lissick for five days, giving Andersen time to determine whether termination was appropriate.

On January 9, Romane emailed Fitzmorris, Weyer, and Weyer's supervisor, Dan Hinrichs. In this email, Romane indicated again that Lissick violated the LOTO protocol, that this violation put Lissick and others at risk, that this violation was Lissick's third, and that she supported Weyer's termination recommendation. After Romane prompted Fitzmorris, he expressed support for Lissick's termination. Fitzmorris signed Lissick's termination paperwork; the paperwork was then signed by Romane, Romane's supervisor, Weyer, Hinrichs, and Andersen's Vice President. Lissick's employment was ultimately terminated on January 11, 2018.

Lissick subsequently filed a complaint in the district court against Andersen, bringing eight claims. After Lissick voluntarily dismissed four of those claims,[2] four remained: Count 1, retaliation for reporting violations of laws, regulations, or rules in violation of the Minnesota Whistleblower Act, pursuant to Minn. Stat. § 181.932, subdiv. 1; Count 4, gender discrimination and retaliation for reporting sexual harassment in violation of the Minnesota Human Rights Act, pursuant to Minn. Stat. § 363A.08; Count 5, age discrimination, pursuant to Minn. Stat. § 181.81[3]; and

_____

[2]Lissick voluntarily dismissed the following claims: Count 2, negligence; Count 3, negligent supervision; Count 6, age discrimination and retaliation in violation of the Minnesota Human Rights Act; and Count 7, retaliatory discharge in violation of the Minnesota Workers' Compensation Act.

[3]Lissick does not raise his Minn. Stat. § 181.81 age discrimination claim in his opening brief, and therefore it is waived. Jenkins v. Winter, 540 F.3d 742, 751 (8th Cir. 2008) ("Claims not raised in an opening brief are deemed waived."); see

-3-

Count 8, retaliation for taking leave time under the Federal Family Medical Leave Act (FMLA), in violation of 29 U.S.C. § 2615(a)(2). Andersen moved for summary judgment on these four claims.

Lissick's claims against Andersen turn on five events unrelated to the LOTO protocol or Lissick's three violations of that protocol. First, on September 6, 2017, Lissick complained to his then-supervisor, Bradley Carmichael, that employees were sending inappropriate text messages to one another, including photos of nude women. Although Lissick did not actually receive these messages or photos, he nevertheless claimed that they made him uncomfortable. Second, at the same time, Lissick also reported that a fellow employee had called him "lipstick" while another employee had called him "love muscle." Carmichael reported Lissick's complaint to HR, and an employee from HR discussed Andersen's workplace policies with Lissick's team. Andersen subsequently issued a written disciplinary notice to the employee who had called Lissick "lipstick." Third, in April 2017, Lissick requested intermittent leave, pursuant to the FMLA, to care for his sick father. Fitzmorris connected Lissick with the third party responsible for administering Andersen employees' FMLA leave time. Lissick was approved to take leave through August 2018, and he utilized this leave time intermittently throughout August, September, and October 2017. Fourth, on September 13, 2017, Lissick reported two employees to HR after those employees allegedly falsified eye-wash-station inspection reports. HR investigated Lissick's report and, after finding that the two employees had falsified the reports, disciplined those employees. Fifth and finally, on October 5, 2017, the employee who was previously disciplined for calling Lissick "lipstick" inadvertently emailed Lissick and in that email referred to Lissick as a "lone wolf." Lissick reported this email to Fitzmorris and Carmichael. Andersen then disciplined that employee for a second time.

---

also Chay-Velasquez v. Ashcroft, 367 F.3d 751, 756 (8th Cir. 2004) ("Since there was no meaningful argument on this claim in [the appellant's] opening brief, it is waived.").

After the conclusion of discovery, Andersen filed a motion for summary judgment which the district court granted in full. The district court dismissed Lissick's complaint with prejudice, stating, "[v]iewing the record in the light most favorable to Lissick, the [district court] finds that Lissick has failed to establish a *prima facie* showing for any of his claims." R. Doc. 71, at 24.

II.

Lissick now appeals the district court's grant of summary judgment. "We review de novo a district court's grant of summary judgment, as well as its interpretation of state law." Marianist Province v. City of Kirkwood, 944 F.3d 996, 1005 (8th Cir. 2019) (citation omitted). "The question is whether the record, viewed most favorably to the non-moving party, shows no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Brill v. Mid-Century Ins. Co., 965 F.3d 656, 659 (8th Cir. 2020) (citation omitted). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." Quinn v. St. Louis Cnty., 653 F.3d 745, 750 (8th Cir. 2011) (citation omitted). We address each of Lissick's claims in turn.[4]

---

[4]Where, as here, the plaintiff relies on circumstantial evidence to support each of these claims, the McDonnell Douglas standard, McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies. See, e.g., Moore, 932 N.W.2d at 323 (explaining that Minnesota courts apply the McDonnell Douglas standard to retaliatory discharge claims under the Minnesota Whistleblower Act); Benassi v. Back & Neck Pain Clinic, Inc., 629 N.W.2d 475, 480 (Minn. Ct. App. 2001) ("Minnesota courts use the McDonnell Douglas framework to determine whether a violation of the MHRA has occurred."); Bosley v. Cargill Meat Solutions, Corp., 705 F.3d 777, 783-84 (8th Cir. 2013) (explaining that where the plaintiff lacks direct evidence of FMLA retaliation, this Court analyzes that claim under the McDonnell Douglas burden-shifting framework). Because we find that Lissick is unable to advance beyond the first step of the McDonnell Douglas framework, i.e., establishing a prima facie case for each of these claims, we do not discuss the framework beyond that first step.

A.

First, Lissick claims that Andersen violated the Minnesota Whistleblower Act by terminating his employment in retaliation for his September 6, 2017 sexual harassment complaint as well as for his September 13, 2017 falsified documentation complaint. We disagree and find that, because he is unable to show causation, summary judgment was appropriate.

The Minnesota Whistleblower Act prohibits employers from "discharg[ing], disciplin[ing], threaten[ing], [or] otherwise discriminat[ing] against, or penaliz[ing]" an employee where that employee "in good faith, reports a violation, suspected violation, or planned violation of any federal or state law or common law or rule adopted pursuant to law to an employer." Minn. Stat. § 181.932, subdiv. 1. To establish a prima facie case of retaliatory discharge, the employee must show: "(1) statutorily-protected conduct by the employee; (2) adverse employment action by the employer; and (3) *a causal connection between the two*." Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 444 (Minn. 1983) (emphasis added). Summary judgment is appropriate where the employee fails to meet any of these three elements. Moore, 932 N.W.2d at 323; see also Lubbers v. Anderson, 539 N.W.2d 398, 401 (Minn. 1995) ("A defendant is entitled to summary judgment as a matter of law when the record reflects a complete lack of proof on an essential element of the plaintiff's claim.").

"The first step for [a Minnesota Whistleblower Act] claim is determining whether the employee engaged in statutorily protected conduct by . . . reporting in good faith a violation or suspected violation of law." Scarborough v. Federated Mut. Ins. Co., 379 F. Supp. 3d 772, 778 (D. Minn. 2019). Lissick and Andersen debate whether Lissick engaged in statutorily protected conduct. However, because under Minnesota law, conduct can be "protected" even where the employee did not "act with the purpose of exposing an illegality," id. at 777, and because we view the record in the light most favorable to Lissick, Brill, 965 F.3d at 659, we assume for the purposes of this appeal that Lissick's September 6 and September 13 reports to

management qualify as protected conduct and that Lissick made those reports in good faith.

Nevertheless, summary judgment was appropriate because Lissick failed to establish causation—an "essential element" of his claim. Lubbers, 539 N.W.2d at 401. An employee may establish causation by presenting direct or circumstantial evidence. Scarborough, 379 F. Supp. 3d at 780-81. "Direct evidence is 'evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action.'" Id. (citation omitted). Lissick acknowledges that he presents no direct evidence but instead notes that "retaliatory motive is difficult to prove" and that it may be proven by "circumstantial evidence." Appellant Br. 37. However, speculation does not qualify as circumstantial evidence. Cokley v. City of Otsego, 623 N.W.2d 625, 633 (Minn. Ct. App. 2001). Instead, "[a] fact is proved by circumstantial evidence when its existence can reasonably be inferred from other facts proved in the case." Id. (emphasis omitted).

Lissick argues that causation may be inferred because his termination followed his September 6 and September 13 reports closely in time. Appellant Br. 41 ("The Appellant has, at the very least, illustrated genuine issues of material fact as to whether the Appellee violated the Whistleblower Act, when it terminated the Appellant within an extremely short period of time after he made good faith reports of violations of the law and engaged in statutorily protected activity, thus showing a causal nexus."). "Although close temporal proximity between protected activity and termination 'may occasionally raise an inference of causation, in general, more than a temporal connection is required.'" Mervine v. Plant Eng'g Servs., LLC, 859 F.3d 519, 526 (8th Cir. 2017) (citation omitted). But cf. Smith v. Allen Health Sys., Inc., 302 F.3d 827, 832 (8th Cir. 2002) ("We have discounted, albeit with qualification, the possibility that mere temporal proximity between protected act and adverse employment action can establish the necessary causal connection.").

In this case, the temporal proximity Lissick points to is too attenuated to create any inference of causation. See, e.g., Harnan v. Univ. of St. Thomas, 776 F. Supp. 2d 938, 948 (D. Minn. 2011). He made reports in September 2017, and he was fired approximately four months later, in January 2018. Under Minnesota law, even a *two*-month timespan between the employee's protected activity and the employer's adverse action is, by itself, too remote to support such an inference. Id. (explaining that, where the plaintiff-employee complained in June 2009 but was not terminated until August 2009, the "temporal proximity without additional evidence supporting a finding of retaliatory animus [was] insufficient to raise a genuine issue of material fact"). Similarly, here, Lissick failed to pair the almost four-month lapse between the date of his reports and the date of his termination with any additional evidence that could support an inference of causation. See, e.g., Mervine, 859 F.3d at 526. Without this additional evidence, Lissick failed to raise a genuine issue of material fact capable of defeating summary judgment, Harnan, 776 F. Supp. 2d at 948. Therefore, summary judgment was appropriate on this claim.

B.

In support of his next claim, Lissick cites the Minnesota Human Rights Act, the "Minnesota Department of Human Rights Act," the Americans with Disabilities Act, the Civil Rights Act, and Minnesota case law governing retaliation claims (similar to the case law which we discussed supra). See Appellant Br. 52-57. After careful review of the record, we presume that Lissick is alleging two distinct claims: sexual harassment creating a hostile work environment and retaliation for reporting sexual harassment, both in violation of the Minnesota Human Rights Act. See, e.g., Appellant Br. 56 ("It is the position of the Appellant that he has claims for sexual harassment because HR and other upper management individuals at Andersen stated very specifically that sending nude pictures and calling the Appellant 'lipstick' violated the sexual harassment policies of Andersen and the law. This type of conduct would be severe and pervasive. Furthermore, the timing of the sexual harassment complaints constitute[s] retaliation."). However, Lissick first fails to show that his co-workers' conduct rose to the level of being severe or pervasive, as

required for hostile work environment claims under the Minnesota Human Rights Act. Lissick is also unable to establish the causal link necessary for a prima facia case of retaliation under the Minnesota Human Rights Act. Therefore, we ultimately find that summary judgment was appropriate on both of these claims.

1.

For Lissick to establish a claim of sexual harassment creating a hostile work environment under the Minnesota Human Rights Act, Minn. Stat. § 363A.03, subdiv. 43, he must show that the conduct was unwelcome, that it consisted of "sexual advances, requests for sexual favors, sexually motivated physical contact[,] or other verbal or physical conduct or communication of a sexual nature," and that it was "sufficiently pervasive so as to . . . create a hostile, intimidating[,] or offensive work environment." See Cummings v. Koehnen, 568 N.W.2d 418, 424 (Minn. 1997) (citation omitted); see also Kenneh v. Homeward Bound, Inc., 944 N.W.2d 222, 230-31 (Minn. 2020) ("The severe-or-pervasive standard reflects a common-sense understanding that, to alter the conditions of employment and create an abusive working environment, sexual harassment must be more than minor: 'the work environment must be both objectively and subjectively offensive in that a reasonable person would find the environment hostile or abusive and the victim in fact perceived it to be so.'" (citation omitted)). "In addition, to hold the employer liable, a plaintiff must show that 'the employer kn[ew] or should [have] know[n] of the existence of the harassment and fail[ed] to take timely and appropriate action.'" Cummings, 568 N.W.2d at 424 (citation omitted). When deciding whether a workplace is sufficiently hostile or abusive as to support a claim, Minnesota courts look to "the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Gagliardi v. Ortho-Midwest, Inc., 733 N.W.2d 171, 176 (Minn. Ct. App. 2007) (citation omitted); Kenneh, 944 N.W.2d at 231 ("To determine whether actionable sex discrimination exists in a given case, all the circumstances surrounding the conduct alleged to constitute sexual harassment,

such as the nature of the incidents and the context in which they occurred, should be examined." (citation omitted)).

Here, Lissick offers only a few facts to support his claim: employees sent inappropriate texts (though not to him); one employee referred to him as "lipstick" and then, on a separate occasion, as a "lone wolf"; and a second employee referred to him as "love muscle." The district court found that this evidence was insufficient to establish a prima facie hostile work environment claim under the Minnesota Human Rights Act. R. Doc. 71, at 21. We agree and find that these sparse complaints, standing alone, do not evidence a work environment that is "objectively . . . offensive in that a reasonable person would find the environment hostile or abusive," despite Lissick's *subjective* belief that it was hostile or abusive. Kenneh, 944 N.W.2d at 230-31. Even if these facts were able to meet the "severe-or-pervasive standard," id., Lissick nevertheless cannot demonstrate that Andersen "kn[ew] . . . and fail[ed] to take timely and appropriate action." Cummings, 568 N.W.2d at 424. Andersen immediately investigated Lissick's complaints, and HR immediately held a meeting with Lissick's team to discuss workplace policies and etiquette. Further, Andersen disciplined Lissick's coworker for calling him "lipstick," then disciplined that coworker for a second time after that coworker referred to Lissick as a "lone wolf." Therefore, summary judgment was appropriate on Lissick's sexual harassment (creating a hostile work environment) claim.

2.

Lissick also argues that Andersen violated the Minnesota Human Rights Act by retaliating against him for his sexual harassment reports (which he made on September 6, 2017, and October 5, 2017). "Under the [Minnesota Human Rights Act], to establish a prima facie case for a reprisal claim, a plaintiff . . . must establish the following elements: '(1) statutorily-protected conduct by the employee; (2) adverse employment action by the employer; and (3) *a causal connection between the two*.'" Bahr v. Capella Univ., 788 N.W.2d 76, 81 (Minn. 2010) (emphasis added) (citation omitted). However, as with Lissick's whistleblower

retaliation claim, discussed <u>supra</u>, this retaliation claim suffers from a lack of causation.

Lissick attempts to establish a causal connection by relying solely on the timing of his complaints and his termination. He briefly states, "In this case the Appellant made the sexual harassment complaints in September of 2017 which constitutes protected conduct and approximately three months later he was terminated," Appellant Br. 54-55, and then, "[T]he timing of the sexual harassment complaints constitute retaliation," Appellant Br. 56. However, these two sentences, unsupported by any authority, do not describe a prima facie case. <u>See, e.g.</u>, <u>Kipp v. Mo. Highway & Transp. Comm'n</u>, 280 F.3d 893, 897 (8th Cir. 2002) ("We have stated that '[g]enerally, more than a temporal connection . . . is required to present a genuine factual issue on retaliation.' Our recent cases have made clear that a 'mere coincidence of timing' can rarely be sufficient to establish a submissible case of retaliatory discharge." (alterations in original) (citation omitted)). Further, the timing in this case—i.e., three and four months between Lissick's September 6 and October 5 complaints, respectively, and his termination—is too attenuated to create an inference of causation. <u>See, e.g.</u>, <u>id.</u> ("[T]he interval of two months between the complaint and [the employee's] termination so dilutes any inference of causation that we are constrained to hold as a matter of law that the temporal connection could not justify a finding [of causation].").

Therefore, because Lissick points only to an "attenuated temporal proximity" and fails to present any other "evidence from which a jury could infer a discriminatory motive," <u>Liles</u>, 851 F.3d at 821, we find that summary judgment was appropriate as to this claim.

C.

Finally, Lissick argues that Andersen retaliated against him for taking leave time under the FMLA. Lissick, again, cannot establish causation, and we therefore find that summary judgment was appropriate.

-11-

The FMLA provides employees with up to 12 weeks of unpaid leave time during any twelve-month period, 29 U.S.C. § 2612(a)(1), and under the FMLA, employers cannot discriminate against employees who take leave pursuant to its provisions, id. § 2615(a)(2). "[A]n employer may not consider 'an employee's use of FMLA leave as a negative factor in an employment action.'" Hite v. Vermeer Mfg. Co., 446 F.3d 858, 865 (8th Cir. 2006). "To establish a prima facie case of FMLA retaliation, an employee must show that [he] engaged in activity protected under the [FMLA], that [he] suffered an adverse employment action by the employer, and *that a causal connection existed between the employee's action and the adverse employment action.*" Quinn, 653 F.3d at 754 (emphasis added).

In his briefing to this Court, Lissick alleges that Fitzmorris, a "key decision maker," knew that Lissick had requested FMLA leave time and that he was on leave when terminated. Appellant Br. 57. He further alleges that "[t]he timing of Lissick's [October 2017] leave and the fact that he was still on intermittent leave [at the time of termination] indicates that the timing of the protected conduct and the adverse action are very suspect," Appellant Br. 57; that "Fitzmorris['s] finger prints are significantly intertwined throughout this case," Appellant Br. 57; and that "[t]he temporal proximity of the FMLA and the termination are extremely close in time and the timing alone is sufficient to survive [summary judgment]," Appellant Br. 59.

Although Lissick is correct that timing *may* be used to establish causation on an FMLA retaliation claim, "[c]ases in which we have determined that temporal proximity alone was sufficient to create an inference of [causation] 'have uniformly held that the temporal proximity must be "very close."'" Hite, 446 F.3d at 866 (citation omitted); see also Ebersole v. Novo Nordisk, Inc., 758 F.3d 917, 925 (8th Cir. 2014) ("Although we have not drawn a definitive line, we have determined that a one-month or two-month lag is too long absent other evidence."). Lissick claims that "because he was notified of termination while he was on FMLA [leave], the timing is instantaneous with termination." Appellant Br. 59. "However, this [C]ourt looks to the date an employer knew of an employee's use (or planned use) of FMLA

leave, not the date [that leave] ended." <u>Sisk v. Picture People, Inc.</u>, 669 F.3d 896, 900 (8th Cir. 2012).  Lissick requested leave time in April 2017—approximately *nine* months before his termination.  Absent additional evidence—which Lissick does not offer—the date of termination is too far removed from the date of Lissick's leave request to create an inference of causation.  <u>See, e.g.</u>, <u>Ebersole</u>, 758 F.3d at 925.  We find that Lissick failed to prove that a causal link exists, and therefore, we again find that summary judgment was appropriate.

## III.

For the above-stated reasons, we find that summary judgment was appropriate and affirm the district court in full.

_____